FILED

2021 Jun-29  PM 05:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALAMABA**
**SOUTHERN DIVISION**

JORDAN MANASCO, an individual;
BROOKE BLAIR, an individual; PEYTON
MASTROPOLO, an individual; and
KATRINA PEREZ, an individual,

       Plaintiffs,

v.

BEST IN TOWN, INC. dba THE FURNACE,
an Alabama Corporation; GREGORY L.
JACKSON, an individual; GRAHAM G.
JACKSON, an individual; DOE MANAGERS
1 through 3; and DOES 4 through 10,
inclusive,

       Defendants.

**Case No.: 2:21-cv-00381-JHE**

**COLLECTIVE ACTION**

**FIRST AMENDED COMPLAINT**
**FOR DAMAGES**

1. **Failure to Pay Minimum Wages,**
   **29 U.S.C. § 206;**
2. **Illegal Kickbacks, 29 C.F.R. §**
   **531.35;**
3. **Unlawful Taking of Tips,**
   **29 U.S.C. § 203;**
4. **Forced Tip Sharing, 29 C.F.R. §**
   **531.35;**
5. **Retaliation, 29 U.S.C. § 215;**
6. **Interference, 29 U.S.C. § 2615; and**
7. **Retaliation, 29 U.S.C. § 2615**

**DEMAND FOR JURY TRIAL**

_____ /

     Plaintiffs JORDAN MANASCO ("Manasco"), an individual, BROOKE BLAIR

("Blair"), an individual, PEYTON MASTROPOLO ("Mastropolo"), an individual, and

KATRINA PEREZ ("Perez"), an individual (collectively, "Plaintiffs"), allege the following upon

information and belief, based upon investigation of counsel, published reports, and personal

knowledge:

**I.**     **NATURE OF THE ACTION**

     1.     Plaintiffs allege causes of action against defendants BEST IN TOWN, INC. dba

THE FURNACE, an Alabama Corporation ("The Furnace"), GREGORY L. JACKSON, an

individual, , GRAHAM G. JACKSON, an individual, DOE MANAGERS 1 through 3, and

DOES 4 through 10, inclusive, (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA"), illegally absconding with Plaintiffs' tips and demanding illegal kickbacks including in the form of "House Fees."

2.     Plaintiff Manasco also, individually, alleges a causes of action of interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*. ("FMLA") for Defendants' interference, restraint, denial of, and retaliation for Plaintiffs' attempts to exercise her rights pursuant to the FLMA and request leave for her chronic anxiety and panic attacks.

3.     These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants in the preceeding three year period to the filing of the Complaint. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

4.     Plaintiffs worked at Defendants' principal place of business located at 309 28th Street N., Birmingham, Alabama 35203-3925.

5.     The Furnace failed to pay Plaintiffs minimum wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

6.     Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.     Plaintiffs bring a collective action to recover the unpaid minimum wages owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

8.     As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, interest, and attorneys' fees.

///

## II.    PARTIES

9.     At all times relevant, JORDAN MANASCO was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 1.

10.     At all times relevant, BROOKE BLAIR was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 2.

11.     At all times relevant, PEYTON MASTROPOLO was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 3.

12.     At all times relevant, KATRINA PEREZ was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 4.

13.     The FLSA Class Members are all current and former exotic dancers who worked at Defendants' club The Furnace located at 309 28th Street N., Birmingham, Alabama 35203-3925 at any time starting three (3) years before this Complaint was filed, up to the present.

14.     Defendant BEST IN TOWN, INC. dba THE FURNACE ("The Furnace") is an Alabama Corporation with its principal address located at 309 28th Street N., Birmingham, Alabama 35203-3925. At all times mentioned herein, The Furnace was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). The Furnace may be served via its agent for service of process, Gregory Jackson at 3927 Lorna Road, Birmingham, Alabama 35244-1030.

15.     Defendant GREGORY L. JACKSON  is the president and co-owner of BEST IN TOWN, INC.

16.     GREGORY L. JACKSON acted directly or indirectly on behalf of The Furnace, and, at all times mentioned herein was "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over The Furnace,

including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at The Furnace. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. GREGORY L. JACKSON had at all times relevant to this lawsuit, the authority to hire and fire employees at The Furnace, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of The Furnace. In particular, he was responsible for determining whether The Furnace complied with the FLSA.

17.     Defendant GRAHAM G. JACKSON  is co-owner and general manager of BEST IN TOWN, INC.

18.     GRAHAM G. JACKSON acted directly or indirectly on behalf of The Furnace, and, at all times mentioned herein was "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over The Furnace, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at The Furnace. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. GRAHAM G. JACKSON had at all times relevant to this lawsuit, the authority to hire and fire employees at The Furnace, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of The Furnace. In particular, he was responsible for determining whether The Furnace complied with the FLSA.

19.     DOE MANAGERS 1 through 3 are the managers/owners who controlled the policies and enforce the policies related to employment at The Furnace.

20.     The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOES 4 through 10, inclusive are

unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief allege thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

21.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

22.     Furthermore, Defendants' club, The Funace, has had, and continues to have, an annual gross business volume in excess of the statutory standard.

23.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at The Furnace as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

24.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

25.     Plaintiffs are informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these

Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

26.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

27.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## III.     VENUE AND JURISDICTION

28.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

29.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

## IV.     ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (AGAINST ALL DEFENDANTS)

### A.     FACTUAL ALLEGATIONS

30.     Defendants operate an adult-oriented entertainment facility located at 309 28th Street N., Birmingham, Alabama 35203-3925.

31.     Defendants' club located at 309 28th Street N., Birmingham, Alabama 35203-3925 currently operates under the name "The Furnace Gentlemen's Club" or "The Furnace".

32.     At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

33.     At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

34.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

35.     Plaintiff JORDAN MANASCO worked as dancer/entertainer for Defendants at various times between 2017 and March, 2021.

36.     Plaintiff BROOKE BLAIR worked as dancer/entertainer for Defendants at various times between 2015 and Fall of 2018.

37.     Plaintiff PEYTON MASTROPOLO worked as dancer/entertainer for Defendants at various times between July 2017 and January 2021.

38.     Plaintiff KATRINA PEREZ worked as dancer/entertainer for Defendants at various times between January 2009 and June 2019.

39.     The primary duty of an entertainer is to dance and entertain customers, and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

40.     Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

41.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facilities featuring nude or semi-nude female entertainers.

42.     Defendants did not pay entertainers on an hourly basis.

43.     Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs stay until late in the morning if she worked.

44.     Defendants would demand that Plaintiffs and other dancers commit to a schedule in advance of their shifts. A dancer's failure to appear at their scheduled time would result in the imposition of late fees of approximately one-hundred and forty ($140) dollars per occurance.

///

45.     Defendants subjected Plaintiff to late fees for failing to appear at a scheduled shift, regardless of whether she provided prior notice or a valid excuse.

46.     Defendants would often schedule dancers at inconvenient times for the purpose of charging and collecting late fees.

47.     Defendants set prices for all VIP performances and took a percentage of all monies earned by dancers.

48.     Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

49.     Defendants controlled the means and manner in which Plaintiff could perform.

50.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

51.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

52.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises.

53.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

54.     Defendants also required Plaintiffs to share their tips with Defendants, and other non-service employees who do not customarily receive tips, including managers, disc jockeys, and house moms.

55.     In exercising control over Plaintiffs and the other dancers, Defendants would subject dancers to unsafe working conditions, take a large portion of dancer's earned monies, and punish dancers for speaking out.

56.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum

of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of her tips and instead required that they divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

57.    Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants fined entertainers for failing to comply with management's rules, including a one-hundred and forty ($140) dollar late fee for failing to adhere to Defendants' schedule.

58.    The Furnace provided and paid for all advertising and marketing efforts undertaken on behalf of The Furnace.

59.    The Furnace paid for the buildings used by The Furnace, maintenance of the facilities, the sound systems, stages, lights, beverages and inventory used at the facilities.

60.    Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

61.    The Furnace's opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at The Furnace.

62.    Exotic dancing is an integral part of The Furnace's operations. The Furnace's advertising and logo prominently displays exotic dancing for its customers. The Furnace is well known as a "strip club."

63.    The Furnace needs entertainers to successfully and profitably operate the The Furnace business model.

64.    The position of entertainer requires no managerial skill of others.

///

65.     The position of entertainer requires little other skill or education, formal or otherwise.

66.     The only requirements to become an entertainer at The Furnace are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process.

67.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

68.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

69.     Plaintiffs were not paid an hourly minimum wage for the time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards.

70.     Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at The Furnace until the premises and the parking lot were cleared of customers.

71.     The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

72.     Defendants have never paid Plaintiffs and the FLSA Class Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

73.     The only source of monies received by Plaintiffs (and the class they seek to represent) relative to their employment with Defendants came in the form of gratuities received

directly from customers, a portion of which Plaintiffs and the FLSA Class Members were required to pay to Defendants.

74.    Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

75.    Plaintiffs and FLSA Class Members who worked at The Furnace performed precisely the same job duties - dancing and entertaining at The Furnace.

76.    Plaintiffs and FLSA Class Members who worked at The Furnace during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

77.    Plaintiffs and FLSA Class Members at The Furnace were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

78.    Plaintiffs and FLSA Class Members at The Furnace during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

79.    Plaintiffs and the FLSA Class Members at The Furnace, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

80.    Defendants required Plaintiffs to pay fees to Defendants and other The Furnace employees, including but not limited to managers, house moms, and disc jockeys.

81.    Defendants required Plaintiffs to pay fees to Defendants and other The Furnace employees for reasons other than the pooling of tips among employees who customarily and regularly received tips.

82.    As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure

to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at The Furnace during the applicable limitations period would elect to participate in this action if provided notice of same.

83.     Upon information and belief, more than one-hundred (100) dancers and entertainers have worked at The Furnace during the three (3) to five (5) years prior to the filing of this action.

84.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seeks to represent, and will adequately represent the interests of the class.

85.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

86.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

87.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

c.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

d.     The hours worked each workday and total hours worked each workweek;

e.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

f.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

g.     The dates, amounts, and nature of the items which make up the total additions and deductions;

h.      The total wages paid each pay period; and

i.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

88.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seeks to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

### B.      INDIVIDUAL LIABILITY UNDER THE FLSA

89.     In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definition of "employer" under the FLSA is not limited by the common law concept of "employer" but "is construed broadly to effectuate its 'humanitarian and remedial purpose'." *Molina v. SMI Sec. Mgmt., Inc.*, No. 11-24245-CIV, 2013 WL 12092072, at *4 (S.D. Fla. July 15, 2013).

90.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley* 180 F.3d 997 (9th Cir. 1999). Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire

and fire employees, determine salaries, and the responsibility to maintain employment records.

91.     Defendants Gregory L. Jackson and Graham G. Jackson are individually liable for failing to pay Plaintiffs and the FLSA Class Members their wages. The actual identities of DOE Managers 1 through 3 are unknown at this time.

## V.   COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-91 as if fully set forth herein.

93.     Plaintiffs brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

94.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at The Furnace. As such, they have first-hand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club have shared with them similar pay violation experiences as those described in this Complaint.

95.     Other employees similarly situated to Plaintiffs work or have worked at The Furnace but were denied pay at the federally mandated minimum wage rate.

96.     FLSA Class Members perform or have performed the same or similar work as the Plaintiffs.

97.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

98.     FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

99.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wages.

100.    Defendants' failure to pay compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

101.    The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

102.    The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

103.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

104.    Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

105.    As such, Plaintiffs bring their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the club The Furnace located in Birmingham, Alabama at any time starting three years before this Complaint was filed.**

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206

**(By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

106.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-105 as if fully set forth herein.

107.    Defendants, through their club, The Furnace, are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

108.     Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

109.     Defendants each failed to pay Plaintiff the minimum wage in violation of 29 U.S.C. § 206.

110.     Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA.

111.     Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

112.     Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, minimum wage  compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

113.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-105 as if fully set forth herein.

114.     Defendants each required Plaintiff to pay monetary fees to Defendants and other The Furnace employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

115.     Defendants' requirement that Plaintiff pay fees to Defendants and other The Furnace employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

116.     Because Defendants each violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with

respect to Plaintiffs' wages.

117.    Because Defendants each violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiff are classified as illegal kickbacks.

118.    Plaintiff is entitled to recover from Defendants all fees that Defendants required Plaintiff to pay in order to work at The Furnace, involving but not limited to house fees and tip sharing.

## THIRD CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

### (By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

119.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-105 as if fully set forth herein.

120.    Plaintiff customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is are tipped employees as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

121.    At all relevant times, each Defendants were "employer(s)" or "joint employer(s)" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

122.    Defendants, through their club, The Furnace, are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

123.    Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

124.    Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

> 29 U.S.C. § 203.

125.    Defendants each kept a portion of tips paid to Plaintiff by Defendants' customers

in the form of fees, fines, mandatory charges and other payments to managers, disc jockeys, and house moms in violation of TIPA.

126.    Defendants each required Plaintiff to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the disc jockeys, managers, and house moms). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

127.    The contribution Defendants required Plaintiff to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiffs and other dancers; but rather, was imposed upon Plaintiffs and other dancers.

128.    By requiring Plaintiff to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

129.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff.

130.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiff the proper amount of the tips to which she was entitled.

131.    Defendants' willful failure and refusal to pay Plaintiff the tips she earned violates the FLSA.

132.    Defendants each kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to managers, disc jockeys, and house moms in violation of TIPA.

133.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiff is entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated

tips, mandatory attorneys' fees, costs, and expenses.

## FOURTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

**(By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

134.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-105 as if fully set forth herein.

135.   Defendants each required Plaintiff to pay monetary fees to other The Furnace employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

136.   Defendants' requirement that Plaintiff pay fees to other The Furnace employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

137.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

138.   Plaintiff is entitled to recover from each of the Defendants all fees that Defendants required Plaintiff to pay other employees in order to work at The Furnace, involving but not limited to forced tip sharing.

## FIFTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF THE FLSA, 29 U.S.C. § 215

**(By Plaintiff Jordan Manasco Individually Against All Defendants)**

139.   Manasco hereby incorporates by reference and re-alleges each and every allegation set forth in paragraphs 1-41 and 89-91 as if fully set forth herein.

140.   Manasco suffers from chronic anxiety and has suffered multiple panic attacks while working at The Furnace.

141.   Defendants were each aware of Manasco's chronic anxiety and panic attacks.

142.   On multiple occasions while working at The Furnace, Manasco would suffer panic attacks while dancing that would require her to stop working.

143.    On multiple occasions, Manasco requested time off work to attend to her chronic anxiety, but Defendants denied her requests.

144.    Despite having knowledge of Manasco's condition, Defendants purposefully scheduled Manasco in back-to-back shifts, exacerbating her condition and panic attacks.

145.    Around December, 2020, during a staff meeting, Manasco objected to management's practice of taking a large percentage of the monies earned by dancers in the VIP rooms and the general conditions at The Furnace. In response, Defendants Gregory L. Jackson and Graham G. Jackson called Manasco "greedy" and threatened to terminate her employment at The Furnace. This event caused Manasco to suffer severe anxiety.

146.    Around January, 2021, while dancing in a VIP room with a customer and another dancer, the customer exposed his genetalia to Manasco. This incident triggered Manasco's severe anxiety.

147.    Manasco complained to management about the incident. In response, defendant Graham G. Jackson punished and fined Manasco and the other dancer two-hundred ($200) dollars each for the incident.

148.    Around late February, 2021, while on a mental health recuperation trip, managers at The Furnace demanded that Manasco comply with an upcoming schedule. When Manasco requested time to attend to her mental health, Defendants threatened adverse action to her employment status.

149.    As a result of these threats, Manasco suffered a panic attack and was hospitalized.

150.    Subsequently, Defendants fired Manasco around early March, 2021.

151.    It is "unlawful for any *person* ... to discharge or in any other manner discriminate against any employee" for making a complaint under the Act, 29 U.S.C. § 215(a)(3) (emphasis added).

152.    Defendants' firing of Manasco was in retaliation for her multiple complaints to management regarding conditions at The Furnace.

153.     As a result of Defendants' retaliation, Manasco lost the opportutnity to earn income. Furthermore, Manasco is entitled to general damages for retaliation under the FLSA.

### SIXTH CAUSE OF ACTION

### INTERFERENCE IN VIOLATION OF THE FLMA, 29 U.S.C. § 2615(A)(1)

**(By Plaintiff Jordan Manasco Individually Against All Defendants)**

154.     Manasco hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-41 and 141-150 as if fully set forth herein.

155.     At all relevant times, Manasco was an "eligible" employee under the FMLA, 29 U.S.C. § 2611(2)(A).

156.     Manasco was employed by Defendants from approximately 2017 to 2021 and worked at least 1,250 hours.

157.     At all relevant times, Defendants Best in Town, Inc., Gregory L. Jackson, Graham G. Jackson, DOE Managers 1 through 3, and DOES 4 thorugh 10, were "employers" under the FMLA, 29 U.S.C. §§ 2611(2)(B).

158.     At the time of Manasco's employment, Defendants employed at least 50 employees within a 75-mile radius of The Furnace.

159.     During the relevant period, Manasco suffered from a serious health condition as defined by the FMLA, 29 U.S.C. § 2612(a)(1)(D) and was entitled to leave.

160.     On multiple occasions throughout her employment, Manasco requested for Defendants to give her time to attend to her mental health.

161.     Despite being on notice that Manasco's request for time off was for a FMLA qualifying reason, Defendants refused to give Manasco time to attend to her mental health.

162.     Because of Manasco's frequent requests for leave, Defendants deliberately scheduled Manasco in back-to-back shifts, exacerbating her condition and panic attacks.

163.     As a direct result of Defendants' interference, Manasco's mental health deteriorated, causing: 1) a reduction in her ability to dance, and thus a reduction of her income earned from customers; 2) severe emotional anguish; and 3) hospitalization.

**SEVENTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF THE FLMA, 29 U.S.C. § 2615(A)(2)**

**(By Plaintiff Jordan Manasco Individually Against All Defendants)**

164.    Manasco hereby incorporates by reference and re-allege each and every allegation set forth in paragraphs 1-41 and 141-150 as if fully set forth herein.

165.    At all relevant times, Manasco was an "eligible" employee under the FMLA, 29 U.S.C. § 2611(2)(A).

166.    Manasco was employed by Defendants from approximately 2017 to 2021 and worked at least 1,250 hours.

167.    At all relevant times, Defendants Best in Town, Inc., Gregory L. Jackson, Graham G. Jackson, DOE Managers 1 through 3, and DOES 4 thorugh 10, were "employers" under the FMLA, 29 U.S.C. §§ 2611(2)(B).

168.    At the time of Manasco's employment, Defendants employed at least 50 employees within a 75-mile radius of The Furnace.

169.    During the relevant period, Manasco suffered from a serious health condition as defined by the FMLA, 29 U.S.C. § 2612(a)(1)(D) and was entitled to leave.

170.    Manasco suffered from chronic anxiety and would often suffer from panic attacks which would render Manasco unable to perform the functions of her position, i.e., exotic dancing.

171.    Defendants were all aware that Manasco suffered from chornic anxiety and panic attacks and would often remove her from the dancing floor/stage when these panic attacks occurred.

172.    On multiple occasions throughout her employment, Manasco requested for Defendants to give her time to attend to her mental health.

173.    Despite being on notice that Manasco's request for time off was for a FMLA qualifying reason, Defendants refused to give Manasco time to attend to her mental health.

174.    Because of Manasco's frequent requests for leave, Defendants deliberately

scheduled Manasco in back-to-back shifts, exacerbating her condition and panic attacks.

175.    Defendants purposefully scheduled Manasco for burdensome shifts, which they were aware Manasco would be more likely to miss.

176.    Defendants purposefully scheduled Manasco for burdensome shifts in order to charge her late fees for her failure to appear on time, and in direct retaliation for her frequent requests for time to attend to her mental health, as well as her complaints about the working conditions at The Furnace.

177.    As a direct result of  Defendants' retaliation, Manasco's mental health deteriorated, causing: 1) a reduction in her ability to dance, and thus a reduction of her income earned from customers; 2) severe emotional anguish; and 3) hospitalization.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs each request of this Court the following relief:

1.      For compensatory damages according to proof at trial of at least $100,000;

2.      For special damages according to proof at trial;

3.      For restitution of unpaid monies;

4.      For attorneys' fees;

5.      For costs of suit incurred herein;

6.      For statutory penalties;

7.      For civil penalties;

8.      For pre-judgment interest;

9.      For post-judgement interest;

10.      For general damages in an amount to be proven at trial;

11.      For declaratory relief;

12.      For injunctive relief; and

13.      For such other and further relief as the Court may deem just and proper.


Dated: June 29, 2021             **s/ Jason P. Tortorici**
                                       Jason P. Tortorici
                                       **SCHILLECI & TORTORICI, P.C.**
                                       100 Centerview Drive, Suite 205
                                       Birmingham, Alabama 35233
                                       Telephone: (205) 978-4211
                                       *jpt@schillecitortoricilaw.com*

                                       John P. Kristensen (*Pro Hac Vice*)
                                       Alejandro Marin (*Pro Hac Vice*)
                                       **KRISTENSEN LLP**
                                       12540 Beatrice Street, Suite 200
                                       Los Angeles, California 90066
                                       Telephone: (310-) 507-7924
                                       Facsimile: (310) 507-7906
                                       *john@kristensenlaw.com*
                                       *alejandro@kristensenlaw.com*

Jarrett L. Ellzey (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile: (888) 995-3335
*jarrett@hughesellzey.com*

***Attorneys for Plaintiffs***

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: June 29, 2021

**s/ Jason P. Tortorici**
Jason P. Tortorici
**SCHILLECI & TORTORICI, P.C.**
100 Centerview Drive, Suite 205
Birmingham, Alabama 35233
Telephone: (205) 978-4211
*jpt@schillecitortoricilaw.com*

John P. Kristensen (*Pro Hac Vice*)
Alejandro Marin (*Pro Hac Vice*)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310-) 507-7924
Facsimile: (310) 507-7906
*john@kristensenlaw.com*
*alejandro@kristensenlaw.com*

Jarrett L. Ellzey (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile:  (888) 995-3335
*jarrett@hughesellzey.com*

***Attorneys for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on Tuesday, June 29, 2021, a true and correct copy of the attached **FIRST AMENDED COMPLAINT FOR DAMAGES** was served via CM/ECF upon the following parties pursuant to Fed. R. Civ. P. 5:

Gregory S. Ritchey
**RITCHEY LAW FIRM, PLLC**
Founders Trust Center
1740 Oxmoor Road
Suite 100
Birmingham, AL 35209
Phone: 205-271-3105
Fax: 205-271-3111
Email: gsritchey@ritcheylaw.com

***Counsel for Defendants***

*/s/ Alejandro Marin*
Alejandro Marin