FILED
2021 Sep-09  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JORDAN MANASCO,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Case No.:2:21-cv-00381-JHE** |
| | * | |
| **BEST IN TOWN, INC. d/b/a THE** | * | |
| **FURNACE,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

**RESPONSE TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE
PURSUANT TO §216(B) OF THE FAIR LABOR STANDARDS ACT**

**COME NOW**, Defendants Best in Town, Inc., Gregory Jackson and

Graham Jackson ("Defendants") and in response to the Plaintiffs' Notice of Motion

and Motion for Conditional Certification and Issuance of Notice Pursuant to

§216(B) of the Fair Labor Standards Act (Doc. 41) (Motion for Cond. Cert.")

states as follows:

## I. DISPUTED FACTS

In support of this response, the Defendants are submitting the Declaration of

Jennifer Sartain that is attached hereto as Exhibit "A" and made a part hereof by

reference.  Also being submitted in support of this response are the Declarations of

Jane Does 1 through 10, which are attached hereto as Exhibits B through K, and

made a part hereof by reference.[1]  As set forth in the attached, there are numerous disputed facts related to the assertions made in the Declarations submitted by Plaintiffs and there are **not** numerous individuals wishing to join this action.

## II.   LEGAL STANDARD

District courts have wide discretion in determining how to manage a collective FLSA action. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). This includes the process undertaken in determining whether to certify an FLSA action as a collective action.  In *Hipp,* the Eleventh Circuit did not "adopt a two-stage process", as claimed by the Plaintiffs, (Doc. 41-1, p. 11) but rather, merely noted that a two-step method "appears to be an effective tool" and further stating that "[n]othing in our circuit precedent, however, requires district courts to utilize this approach." *Id.* .  At least one sister circuit, the Fifth Circuit, has recently specifically rejected the two-step method as it "frustrates, rather than facilitates, the notice process" and the "FLSA, and *§ 216(b)* in particular, says nothing about [']conditional certification['] or any of the requirements of Rule 23." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 439-40 (5th Cir. 2021) ("We thus cannot read the statute as supporting any of the certification tests that district courts have created to determine whether a group of employees should receive notice about a collective action. And there is not Supreme Court case stating

---

[1] Defendants are filing simultaneously herewith a motion to allow the declarants to remain anonymous for privacy reasons.

otherwise."). While district courts have discretion, it is not unbridled discretion and "courts must be scrupulous to respect judicial neutrality by avoiding even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La. Roche v. Sperling*, 493 U.S. 165, 166, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Defendants propose this Court reject the burdensome two-step process requested by Plaintiffs and reject conditional certification at this state as the Plaintiffs' application for certification is woefully inadequate.

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

### III.   ARGUMENT

#### A.   FACTUAL SHOWING

Plaintiffs request that this Court grant their motion based on a "fairly lenient standard and use the two-step method for certifying a collective action claiming that the Eleventh Circuit "adopted a two-stage approach" in *Hipp*, 252 F.3d at 1216. (Doc. 41, p. 11). In order to proceed as a collective action, a plaintiff is required to demonstrate through pleadings and affidavits that: (1) there are employees of the employer who are similarly situated to the named plaintiff with respect to their job requirements and pay provisions; and (2) that those employees desire to opt in the action. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68

(11th Cir. 1991). While the plaintiffs' burden at this stage is not onerous, "neither is it invisible." *Brooks v. A Rainaldi Plumbing, Inc*., Case No. 6:06-cv-631-Orl, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006).  Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie v. Kindred Hosps. E., L.L.C.,* 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Dybach v. State of Fla. Dep't of Corrs.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). (emphasis added). Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. *Id.*

In *Hipp,* the Eleventh Circuit specifically stated it did not require District Courts to utilize the two-step practice as more particularly set forth below:

> The two-tiered approach to certification of *§ 216(b)* opt-in classes described above appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases. Nothing in our circuit precedent, however, requires district courts to utilize this approach. The decision to create an opt-in class under *§ 216(b)*, like the decision on class certification under *Rule 23*, remains soundly within the discretion of the district court. *See  Grayson,* 79 F.3d at 1097 ( § 216(b) class); *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) (Rule 23 class), *cert. denied*, __ U.S. __, 149 L. Ed. 2d 285, 121 S. Ct. 1354 (2001).
> *Hipp*, 252 F.3d at 1219.

In *Hipp,* the Eleventh Circuit referenced a Fifth Circuit opinion, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995) to describe the two-step approach.  *Hipp*, 252 F.3d at 1218. In *Mooney,* the Fifth Circuit reviewed the

method utilized by the district court which followed the two-step analysis expressed in a New Jersey case, *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted in part, appeal dismissed, Lusardi v. Lechner,* 855 F.2d 1062 (3rd Cir.1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J.1988), *aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.*, 975 F.2d 964 (3rd Cir.1992).  However, in *Mooney*, the Fifth Circuit specifically did not endorse the *Lusardi* method utilized by the district court stating:

> We find it unnecessary to decide which, if either, of the competing methodologies should be employed in making an ADEA class certification decision. . . In so holding we specifically *do not* endorse the methodology employed by the district court, and *do not* sanction any particular methodology. We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.

More importantly, the Fifth Circuit has now rejected the *Lusardi* two-step approach in its decision in *Swales*, 985 F.3d 430.  In *Swales,* the Fifth Circuit found that "*Lusardi* has no anchor in the FLSA's text or in Supreme Court precedent interpreting it. Indeed, the word [']certification,['] much less [']conditional certification,['] appears nowhere in the FLSA." *Id.* at 434.  Instead, the Fifth Circuit embraced the following principles:

> (1) the FLSA's text, specifically *§ 216(b)*, which declares (but does not define) that only those "similarly situated" may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may "facilitat[e] notice to potential plaintiffs" for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation. These are

the only binding commands on district courts. But they are unequivocal. And they have significant implications. In our view, a district court must rigorously scrutinize the realm of "similarly situated" workers, and must do so from the outset of the case, not after a lenient, step-one "conditional certification." Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs. These bedrock rules, not *Lusardi*, define and delimit the district court's discretion. (Footnote omitted).
*Id.*

In other words, the *Swales* court recognized that using a two-step process in which step one is a "lenient" standard that may result in notice going out to a class of workers, when the collective may ultimately not even be certified, is the epitome of unnecessarily "stirring up" litigation, and actually unnecessarily increases the complexity and costliness of an FLSA case.  In *Swales*, the Fifth Circuit explained how *Lusardi* came about and specifically noted that

*Hoffman-La Roche* "nowhere suggests that employees have a right to receive notice of potential FLSA claims." It's discretionary with the district court. The Court cautioned, however, that trial courts do not possess "unbridled discretion" in overseeing collective actions and sending notice to potential opt-in plaintiffs. Given the real risk of abuse of the collective-action device, a court's "intervention in the notice process" cannot devolve into "the solicitation of claims." In overseeing the process, the district court "must be scrupulous to respect judicial neutrality. To that end, district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." No judicial thumbs (or anvils) on the scale. In sum, the Court held that a district court must oversee the notice process agnostically. But it didn't prescribe how district courts should do that: "We confirm the existence of the trial court's discretion, not the details of its exercise."
*Id.,* 435-36.  (Citations omitted).

The Fifth Circuit also noted the Eleventh Circuit's only endorsement of the two-step process set out in *Lusardi* came after a jury verdict,[2] and did not address the process in the notice giving context.  *Id.* at 439.  It was also noted that the Eleventh Circuit, in its decision in *Hipp,* only found that *Lusardi's* two-step process was an effective tool, but district courts are not required to use it.  *Id.*

In *Swales,* the Fifth Circuit determined that

*Lusardi* frustrates, rather than facilitates, the notice process. The first problem is that the *Lusardi* test comes in many varieties. The district court conceded confusion precisely because courts "have taken different approaches" to *Lusardi* when some discovery has occurred. The use of *"Lusardi"* or even collective-action "certification" has no universally understood meaning. Thus, the amorphous and ad-hoc test provides little help in guiding district courts in their notice-sending authority.
Second, *Lusardi* distracts from the FLSA's text. The FLSA, and *§ 216(b)* in particular, says nothing about "conditional certification" or any of the requirements of *Rule 23*. We thus cannot read the statute as supporting any of the certification tests that district courts have created to determine whether a group of employees should receive notice about a collective action. **And there is no Supreme Court case stating otherwise.**
*Id.* at 439-40. (Emphasis added).

As noted in *Swales,* while the two-step process "may be common practice" such "practice is not necessarily precedent", and "nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any [']certification['] process.  *Id.* at 440.  Instead, the law says that "the district court's job is ensuring that notice goes out to those who are [']similarly situated,['] in a way that scrupulously avoids endorsing the merits of

---

2 Citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).

the case" and a "district court abuses its discretion, then, when semantics of

[']certification['] trump the substance of [']similarly situated[']." *Id.*

The *Swales* Court found that the district court's application of the two-step

process set out in *Lusardi* was inappropriate for the following reasons:

> the threshold issue here depends on the economic-realities test, which asks
> how much control the employer had over the independent contractor. Thus,
> the district court needed to consider the evidence relating to this threshold
> question in order to determine whether the economic-realities test could be
> applied on a collective basis. If answering this question requires a highly
> individualized inquiry into each potential opt-in's circumstances, the
> collective action would quickly devolve into a cacophony of individual
> actions. As KLLM points out, the individualized nature of the economics-
> realities test is why misclassification cases rarely make it to trial on a
> collective basis.
> To determine, then, whether and to whom notice should be issued in this
> case, the district court needs to consider all of the available evidence.
> *Id.,* at 442 (Citations omitted).

In *Swales,* the Fifth Circuit found that the fact that there is a threshold

question which is potentially dispositive -- whether a valid independent-contractor

classification bars application of the FLSA -- "is intertwined with a merits question

does not itself justify deferring those questions until after notice is sent out. . . [and

it is] improper to ignore evidence of other threshold matters, like whether the

plaintiffs are [']employees['] such that they can bring an FLSA claim." *Id.* at 441.

Instead of adherence to the *Lusardi* or any other test, the Fifth Circuit suggested

the following:

> a district court should identify, at the outset of the case, what facts and legal
> considerations will be material to determining whether a group of

"employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.
*Id.*

It is respectfully requested that this Court consider utilizing a similar approach as is suggested above. This approach is aligned with the concept that the process should not "stir-up" litigation, as the two step conditional certification process does. Additionally, the Eleventh Circuit has decidedly left this process to the discretion of the District Courts. This Court can utilize its broad, litigation-management discretion, to identify facts and legal considerations that are material and authorize preliminary discovery accordingly instead of utilizing a process even the Eleventh Circuit states a district court is not required to use. *Hipp,* at 1219. This is especially true where the party opposing conditional certification presents evidence, as has been presented in this case, refuting or undermining the plaintiff's allegations. *See, e.g., Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (rejecting plaintiffs' argument that detailed analysis of the parties' evidence was "inappropriate" at the conditional certification stage). Plaintiff has provided scant evidence (and indeed, less evidence than Defendants) that the claimants are *similarly*-situated, and no evidence that there is a desire

amongst the class to join. Accordingly, this Court should not grant Plaintiffs' request.

### B. PLAINTIFFS FAILED SHOW A SUFFICIENT NUMBER OF INDIVIDUALS WISHING TO OPT IN

Certification and judicial notice is inappropriate in any case where the plaintiff fails to show a class-wide interest in joining the class to be certified. *Hipp*, 252 F.3d at 1219 (emphasis added). This is Plaintiff's burden. *Haynes*, 696 F.2d at 886. In determining whether a plaintiff has met her burden, there is no fixed rule for how many putative class members must demonstrate interest, but it is not sufficient for Plaintiffs to show only that their joining is within the realm of possibility (i.e., class members exist); instead, Plaintiffs must prove that others who have not joined have an actual desire to join the lawsuit. *See Dybach*, 942 F.2d at 1567-68; *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211 (M.D. Fla. 2003). Plaintiffs likewise cannot satisfy the Eleventh Circuit standard by offering her mere "belief" that other employees may be interested in joining his lawsuit. *See Mackenzie,* 276 F. Supp. at 1220 (holding that "plaintiffs or counsel's belief in the existence of other employees who may desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice.").

Instead, Plaintiffs must identify specific individuals interested in joining. Plaintiffs and the Opt-Ins do not identify anyone by name. *See id; see also Hoffer*

*v. Ocwen Loan Servicing, Inc.*, CASE NO. 08-81399-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 45536 (S.D. Fla. May 19, 2009) (plaintiffs' mere testimony that they were "aware of other loan resolution consultants who have expressed an interest in joining the lawsuit" was insufficient because it did not specifically name other individuals); *compare with Roots v. Morehouse School of Medicine, Inc.*, the court found sufficient evidence that other employees wanted to join the action because plaintiff's affidavits included names of specific individuals. *Roots v. Morehouse Sch. of Med., Inc.*, CIVIL ACTION NO. 1:07-CV-0112-JOF, 2008 WL 11334083, at *4 (N.D. Ga. Jan. 18, 2008).

Even when names are identified, courts still consider evidence of the relative size of the group that the plaintiff can prove is interested in joining, compared to the size of the putative class, and typically deny certification on the basis of "lack of interest" when only a small percentage of opt-ins have shown interest. *See, e.g.*, *West v. Border Foods, Inc.*, No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *6 (D. Minn. July 10, 2006) (denying conditional certification in off-the-clock case where only 2.5% of the putative class were potentially required to work off-the-clock); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 2002 U.S. Dist. LEXIS 664, at *7-8 (D. Or. Jan. 9, 2002) (denying certification of a collective action where only 2.7% of the employees opt-in into the class).

It should not be overlooked by this Court that Plaintiffs' counsel has been aggressively advertising in social media the existence of this case since the filing of the action on March 12, 2021 and soliciting others to join.[3] But as of this filing, a total of nine (9) people filed consents, with two (2) already withdrawing their consents and requesting to be dismissed from the case.  (See Docs. 24 and 39). Also, each of the Plaintiffs that submitted affidavits essentially stated the exact same thing regarding potential plaintiffs – that they believe there is an interest in joining the action -- without referencing a single name of any potential plaintiff. Further, Plaintiffs did not submit a single affidavit from any potential class member.  "[C]ertification of a collective action and notice to potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit." See *Barten v. KTK & Assoc., Inc.* No. 8:06-CV-1574-T-27EAJ, 2007 U.S. Dist. LEXIS 5408 at *6 and 7 (M.D. Fla. July 24, 2007) ("A plaintiff's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class.") (internal quotation marks omitted).  Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. *Id.* (averments that

---

3 https://www.facebook.com/stopdancerswagetheft/ (March 15, 2021 posting) and https://www.instagram.com/p/CMc_W6LhsC7/ (March 15, 2021) which are attached hereto as Exhibits L and M and made a part hereof by reference.

they "think" other employees would opt in are speculative, vague and conclusory). Likewise, in this case, no affidavits were submitted by any potential class member and the Plaintiffs' affidavits only contain speculative, vague and conclusory averments. *See Wombles v. Title Max of Ala., Inc.*, CIVIL ACTION NO. 3:03cv1158-C (WO), 2005 U.S. Dist. LEXIS 34733, 2005 WL 3312670, at *3 (M.D. Ala. Dec. 7, 2005) (two consents to join and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in).

In contrast to the vague assertions of the Plaintiffs, Defendants' declarants explicitly stated their desire not to receive legal notices, nor to be contacted by any attorneys. (Exs. B-K); *see also Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV-770-T-27MSS, 2006 WL 752831, at *4 (M.D. Fla. Mar. 22, 2006) (denying certification based on sworn statements from other employees expressing disinterest in joining the litigation.) Accordingly, Plaintiffs have failed to show that there is enough to interest to warrant certification or even "conditional" certification.

## C.   OVERREACHING NOTICE AND PROCESS

Defendants are concerned about the effect of Court-issued Notice on entertainers' privacy expectations. Given the sensitive nature of their chosen occupation (which often involves nudity in front of strangers), it is well-documented that entertainers expect and rely upon not just privacy, but anonymity,

with respect to their chosen profession.[4] Defendants are concerned about the intrusion that Court-issued Notice may inflict upon class members.[5] It would be a terrible breach of an entertainers' privacy to send a Court-issued Notice to her home or to her cell phone, without her knowing consent, when that act could unwittingly expose her occupation to family members (including children and younger siblings) and cause reputational damage or any number of personal or family problems for that individual. Plaintiff and the opt-ins are welcome to pursue their claims, because they chose to do so. They should not be permitted to potentially expose, embarrass, or humiliate other women who have chosen not to pursue claims against the Defendants, despite likely knowing of their option to sue for purported misclassification. *See Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (admonishing courts to be "mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation.") (emphasis added). The power to grant preliminary certification power must "be exercised with discretion and only in appropriate cases." *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1233 (M.D. Ala. 2003) (citing *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983)).

---

4   *See*   https://abovethelaw.com/2010/06/motion-practice-of-the-day-strippers-wish-toremain-anonymous/   (attached as Ex. N);   http://stripperchoice.com/   (attached as Ex. O);   https://www.latimes.com/opinion/op-ed/la-oestormy-daniels-strippers-dynamex-california-20190205-story.html (attached as Ex. P).

5  For example, many entertainers have moved on from adult entertainment into new professions, gotten married, had children, and/or live with significant others or family who may not know of their past occupation.

In addition to opposing the appropriateness of conditional certification of a collective action in this matter, Defendants have numerous objections to the form and content of Plaintiffs' proposed Notice. If the Court were to find that conditional certification and notice are appropriate, which Defendants maintain the Court should not do for the reasons set forth above, the Notice and Consent to Join forms proposed by Plaintiffs would need to be modified significantly. As an initial matter, if conditional certification is granted, Defendants submit that the parties should be instructed to meet and confer regarding a mutually agreeable form of notice and submit such form to the Court. If the parties cannot agree on a mutually acceptable form, the parties could then submit their own proposed forms to the Court, with the parties permitted to raise objections to each other's proposed form. *See Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1106 (M.D. Ala. 2003) (instructing the parties to work together in good faith to resolve any objections to the plaintiffs' proposed notice). However, to the extent the Court wishes to consider the Notice and Consent to Join forms presented by Plaintiffs, Defendants raise the following arguments in opposition.

### 1.     The Lookback Period Should be Limited to Two Year

"Under the FLSA, there is a two-year statute of limitations, unless an employer's violations are deemed 'willful,' in which case there is a three-year statute of limitations." 29 U.S.C. ☐ 255(a). "A violation is 'willful' if the employer

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA. The showing needed for a finding of 'willful' is demanding in that even if an employer acted unreasonably, if the employer's action was not reckless in determining its legal obligations under the FLSA, such action is not 'willful.'" *Powell v. Carey Intern, Inc.*, 483 F. Supp. 2d 1168, 1176 (S.D. Fla. 2007). Here, Plaintiffs fail to set forth **any** substantive allegations which might support such a showing, instead relying on entirely conclusory allegations of willfulness. And, to the contrary, the evidence produced by Defendants reflect that Defendants did not act either unreasonably or recklessly – but rather responsibly - and, therefore, that any potential violation of the FLSA (as any violation is denied) was, therefore, far from "willful." Further, Defendants posted the Fair Labor Standards Laws and followed the local laws of the City of Birmingham regarding entertainers being required to obtain permits and licensing, including dancing permits and a Business Licenses (Division IV Dancing) before dancing or performing. *See* https://www.birminghamal.gov/wp-content/uploads/2017/08/General-Information-for-New-Businesses.pdf[6] Having taken affirmative measures to prevent any violations and having also followed the

---

[6] It is common for Courts to take judicial notice of governmental websites. *Ala. Rules of Evidence*, § 201; *see also Petty v. Allen*, 77 So. 3d 1182, 1183 n.3 (Ala. Civ. App. 2010) (judicial notice of regulations found on Dept. of Corrections website); *Johnson v. Hall*, 10 So. 3d 1031, 1035 (Ala. Civ. App. 2008) (recognizing that a Kentucky appellate court in Polly v. Allen, 132 S.W.3d 223, 226 (Ky. Ct. App. 2004) observed that a court can take judicial notice of "public records and governmental documents available from reliable sources on the internet.").

laws set forth by the City of Birmingham, any violation of the FLSA cannot be deemed "willful." Accordingly, if a violation were to be found, the two year – and not the three year – statute of limitations should be applied, and notice should be limited accordingly, so as not to include persons with stale claims amongst the putative class members.

Further, if conditional certification is granted and notice approved, the two-year lookback period should flow from the date notice is sent to the collective class and not the date the Complaint was filed. Indeed, even if the three-year statute of limitations were taken into account for purposes of notice, Plaintiffs' proposed timeframe is overly broad as it would result in notice being sent to numerous employees who worked for Defendant during a period which exceeds the longest applicable statute of limitations for FLSA claims. As there is no reason to send notice to individuals whose claims are barred by the longest applicable statute of limitations, courts have routinely held that the lookback period appropriately flows from the date notice is sent. *See, e.g.,* G*utescu v. Carey Int'l, Inc.,* No. Case Number: 01-4026-CIV-MARTINEZ, 2003 WL 25586749, at *17–18 (S.D. Fla. July 17, 2003) (concluding that the notice should reflect a three-year period from the date that the notice is sent, not from the date that the complaint was filed); *Brown v. Ansafone Contact Ctrs., L.L.C.*, No. Case No: 5:18-cv-490-Oc-30PRL, 2018 WL 7268126, at *3 (M.D. Fla. Dec. 7, 2018) (approving notice that reflected

a three-year period from the date that the notice was sent); *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *9 (M.D. Fla. Aug. 21, 2008) (limiting the temporal scope of the notice to current and former employees "who worked for defendant within the last three years from the date the letter is mailed" and noting that "because the statute of limitations runs until the written opt-in notice is filed with the Court, 29 U.S.C. § 256, it is prudent to calculate the period from the latest date possible"); *Gonzalez v. TZ Ins. Sols., L.L.C.*, No. 8:13-CV-2098-T-33EAJ, 2014 WL 1248154, at *6 (M.D. Fla. Mar. 26, 2014) (requiring defendant to produce names and contact information "of the putative class members, which includes sales agents employed (or formerly employed) in a Florida location within the last three years"); *Green v. Grand Villa*, No. Case No: 8:15-cv-1973-T-30MAP, 2015 WL 7777537, at *3 (M.D. Fla. Dec. 3, 2015) (holding that notice should be sent to individuals who worked for defendant "as Resident Care Assistants at any time within three years of receiving notice of this lawsuit"). The case law is clear that the cut-off date for class membership should be the date two or three years prior to the issuance of the class notice. *See Sellers v. Sage Software Inc.*, No. 1:17-cv-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018).*; see also Stitt v. Am. Disposal Servs. of Ga.*, CIVIL ACTION FILE NO. 1:18-CV-2516-TWT, 2018 WL 6716046, at *3 (N.D. Ga. Dec. 20, 2018)). Therefore, even if this Court were to grant certification, the class should not

include individuals who stopped performing at Defendant's club more than 2 years before the Notice's mailing date.

### 2.    Dissemination of Notice and The Opt-In Period.

Should notice be sent, it should be sent only to personal email addresses (if available) of putative class members as sending notice in any other fashion is unnecessarily duplicative and disruptive to the workplace. There is no reason why clear written notice sent to an individual's home address and personal email is not a sufficient means of notifying the individual of the case and the opportunity to join. Defendants also object to issuing this proposed Notice via text message. *See Sellers v. Sage Software Inc.*, No. 1:17-cv-03614-ELR, 2018 WL 188420, at *14 (N.D. Ga. May 25, 2018) (sending notice via text message is unnecessary and potentially costly for the recipients); *see also Miller v. JAH, L.L.C.*, No. Civil Action Number 5:16-cv-01543-AKK, 2018 U.S. Dist. LEXIS 2139, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("the court has serious reservations about sanctioning text messages as a way to reach the potential class[,] . . . some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges.")

For the same reasons, notices should not be posted at Defendant's workplace, online on the website or social media. In addition, "posted notices are generally permitted only when mailing has proven inadequate or the defendant has

been uncooperative," which is not the case here. *Green*, 2015 WL 7777537, at \*3. *See also* Sutton v. Singh, *No. 6:12–cv–1254–Orl–28TBS, 2013 U.S. Dist. LEXIS 81162, at \*12–13* (M.D. Fla. May 2 2013) (finding the plaintiffs' request for posting of class notice at the workplace to be "premature" because the plaintiffs did not show that the defendant "produced an inadequate list of names and/or addresses to [p]laintiffs, thereby necessitating some other form of notice"); Isaacs v. One Touch Direct, *LLC, No. 8:14–cv–1716, 2015 WL 248658, at \*3* (M.D. Fla. Jan. 20 2015) (declining to require a workplace posting); *Gonzalez*, 2014 WL 1248154, at \*6 (declining to require a workplace posting and noting "other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process").

Finally, Defendant proposes that the Court limit the opt-in period to forty-five (45) days and reject Plaintiffs' request to send a reminder notice, which is in line with the practice of courts in this area. *See, e.g., D*ean v. W. Aviation, L.L.C.*, No. 17-cv-62282-BLOOM/Valle, 2018 WL 1083497, at \*6 (S.D. Fla. Feb. 28, 2018) (internal citation omitted) (denying plaintiff's request for reminder notices and finding them to be unnecessary, redundant, and improper); *Cooper v. E. Coast Assemblers, Inc.*, CASE NO. 12-80995-CIV-MARRA, 2013 WL 308880, at \*3 (S.D. Fla. Jan. 24, 2013) (internal citation omitted) (finding "no reminder notice postcards" may be sent to the putative class after the initial notices are delivered);

*Green*, 2015 WL 7777537, at *3 ("Courts in this district have found…that, without circumstances to warrant otherwise, one notice is enough."); *Isaacs*, 2015 WL 248658, at *3 (concluding that reminder notice was unnecessary). Indeed, sending a reminder notice to potential opt-in plaintiffs could impermissibly and prejudicially "be interpreted as [an] encouragement by the Court to join the lawsuit." *Dean*, 2018 WL 1083497, at *6.

### 3. Defense Counsel's Name/Contact Information Must be Included.

Defendant also objects to the Plaintiff's proposed Notice as it omits defense counsel's name and contact information. Defense counsel's name and contact information should be included in the interest of full disclosure to recipients. *See Pares v. Kendall Lakes Auto., L.L.C.*, No. Case Number: 13-20317-CIV-MORENO, 2013 WL 3279803, at *10 (S.D. Fla. June 26, 2013) and *Gonzalez*, 2014 WL 1248154, at *5 (requiring same).

### 4. Right to Independent Legal Representation.

The Notice also fails to inform recipients of their right to obtain independent legal representation. Instead, the Notice directs potential class members to Plaintiffs' own counsel and leads them to believe that they have no choice but to be represented by Plaintiffs' counsel. *See Compagnone v. DL Pool Serv., L.L.C.*, No. 215-CV-647-FTM-99-MRM, 2016 WL 6575087, at *5 (M.D. Fla. Nov. 7, 2016) (agreeing that "potential opt-ins should be informed that they may obtain

independent legal counsel"); *Tafarella v. Hollywood Greyhound Track*, No. 07-60017-CIV, 2007 WL 2254553, at *4 (S.D. Fla. Aug. 1, 2007) (recognizing that "[a] Consent Notice for 29 U.S.C. § 216 collective action must be informative, neutral, and make clear that prospective plaintiffs are free to select their own counsel…").

### 5.     Information Concerning Opt-Ins' Obligations and Rights.

The Notice "should further warn potential plaintiffs of the possible costs and liabilities of joining this action in order to facilitate an informed decision" as to whether to join the lawsuit, including that Defendants may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful and yet it fails to do so. *Pares*, 2013 WL 3279803, at *10; *Dean*, 2018 WL 1083497, at *4-5. *See also Sealy v. Keiser Sch., Inc*, CASE NO. 11-61426-CIV-DIMITROULEAS, 2011 WL 7641238, at *4 (S.D. Fla. Nov. 8, 2011) ("the proposed notice fails to fully advise potential class members of the consequences of opting in to the lawsuit, including that Defendant may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful, and that potential class members may be required to appear for trial in Fort Lauderdale, Florida"); *Gonzalez*, 2014 WL 1248154, at *5 (holding the class notice must fully advise the notice recipients that if plaintiffs are unsuccessful defendant may attempt to recover its costs from the potential class members); *White v. Subcontracting Concepts, Inc.*, No. 8:08-cv-

620-T- 30TGW, 2008 WL 4925629, at *2 (M.D. Fla. Nov. 14, 2008) (approving of the proposed notice except to the extent to warn potential class members of "the consequences of opting-in, including liability for indemnification, attorney's fees and costs."). Plaintiffs' notice must be revised as it does not include any mention of the fact that if Plaintiffs do not prevail in this action, Defendants may seek to recover its costs from potential class members pursuant to Fed. R. Civ. P. 54.

### 6.    Disclosure of Personal Information and Phone Numbers

Even though such information is not needed to send notice by mail and e-mail, Plaintiffs requests driver's licenses, work locations and phone numbers for each putative class member. Plaintiffs' intrusive request should be denied as "disclosure of the class members' social security numbers and telephone numbers is unnecessary because communication by e-mail and regular mail provide fair and proper notice." *Isaacs*, 2015 WL 248658, at *3. *See also*, *Maar v. Beall's, Inc.*, No.: 16-cv-14121, 2016 WL 10587201, *6 (S.D. Fla. Nov. 23, 2016) (holding defendant not required to produce telephone numbers or social security numbers).

### D.    TOLLING OF STATUTE OF LIMITATIONS

The Plaintiffs have not provided sufficient reasons for tolling the statute of limitations and the cases cited by the Plaintiffs involve situations where there was undue delay in certifying the collective action.  For those putative plaintiffs who have not yet opted into the suit, Plaintiffs do not represent them, and therefore,

Plaintiffs have no authority to seek equitable tolling on their behalf. *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1249 (11th Cir. 2003) (a plaintiff in a FLSA action has no right to represent other plaintiffs and the action does not become a "collective action" until other plaintiffs affirmatively opt into the class by giving written and filed consent). Until these putative plaintiffs opt into this suit, the Court has no jurisdiction over them, and any opinion regarding equitable tolling as to them would be an advisory opinion. *Id.* ("Until such consent [to join an FLSA suit] is given, no person will be bound by or may benefit from judgment.") (quotation omitted).

### E.   CONCLUSION

Based on the above arguments, the Defendants respectfully request that this Court deny the Plaintiffs Motion for Conditional Certification at this stage and utilize this Court's broad, litigation-management discretion to identify what facts and legal considerations will be material to determining whether a group of claimed employees is similarly situated through the use of preliminary discovery. The Defendants pray for such other or different relief as is just.

Respectfully submitted this the 9th day of September 2021.

**RITCHEY & RITCHEY**

*/s/Gregory S. Ritchey*
Gregory S. Ritchey, Esquire
{ASB-8193-H68G}

Attorney for Defendants, Best in Town, Inc. d/b/a The Furnace, Gregory Jackson and Graham Jackson

**OF COUNSEL:**
**Ritchey Law Firm, PLLC**
Founders Trust Center
1740 Oxmoor Road, Suite 100
Birmingham, AL 35209
Telephone:   (205) 271-3105
Email:        gsritchey@ritcheylaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been served upon the following:

Jason P. Tortorici, Esquire
Schelleci & Tortorici, P.C.
100 Centerview Drive, Suite 205
Birmingham, AL 35233
jpt@schillecitortoricilaw.com

Jarrett L. Ellzey, Esquire
ELLZEY & ASSOCIATES, PLLC
1105 Milford Street
Houston, Texas 77066
jarrett@hughesellzey.com

John P. Kritensen, Esquire
Kristensen LLP
12540 Beatrice Street, Suite 200
Los Angeles, CA  90066
john@kristensenlaw.com
(*Pro Hac Vice*)

by hand delivery, email, facsimile transmission and/or by placing a copy of same in the United States Mail, postage prepaid and delivered to the address above, and/or by the Clerk of Court using the electronic filing system, on this the 9th day of September 2021.

*/s/Gregory S. Ritchey*
Of Counsel

25