FILED

2022 Dec-06  PM 07:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JORDAN MANASCO, et al. | **Case No.: 2:21-cv-00381-JHE** |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED; MOTION OPPOSED** |
| v. | |
| BEST IN TOWN, INC. dba THE FURNACE, an Alabama Corporation; GREGORY L. JACKSON, an individual; GRAHAM G. JACKSON, an individual; DOE MANAGERS 1 through 3; and DOES 4 through 10, inclusive, | **COLLECTIVE ACTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | Trial Date: June 5, 2023 |
| | Amended Complaint Filed: June 29, 2021 |

_____ /

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF UNDISPUTED FACTS ........................................ 3

III.   SUMMARY JUDGMENT STANDARD ........................................... 14

IV.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
       ON THE ISSUE OF MISCLASSIFICATION AS INDEPENDENT
       CONTRACTORS ......................................................................... 16

V.     PLAINTIFFS WERE/ARE EMPLOYEES UNDER ECONOMIC
       REALITIES TEST ...................................................................... 21

       A.    THE FURNACE EXERCISED SIGNIFICANT CONTROL OVER
             DANCERS, INCLUDING PLAINTIFFS .......................................... 21

       B.    DEFENDANTS WERE IN CONTROL OF PLAINTIFFS
             OPPORTUNITY FOR PROFIT OR LOSS BASED ON THEIR
             MANAGERIAL SKILLS ............................................................ 24

       C.    DEFENDANTS' INVESTMENTS IN THE FURNACE GREATLY
             EXCEED PLAINTIFFS' INVESTMENTS ........................................ 25

       D.    NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT
             ENTERTAINMENT DANCES ..................................................... 27

       E.    DEFENDANTS HIRED PLAINTIFFS TO WORK AT THE
             FURNACE INDEFINITELY ......................................................... 28

       F.    PLAINTIFFS PROVIDED AN INTEGRAL PART OF
             DEFENDANTS' BUSINESS ........................................................ 28

VI.    GRAHAM JACKSON IS AN EMPLOYER UNDER THE FLSA ............. 29

VII.   DEFENDANTS CANNOT PROVE GOOD FAITH AS A MATTER OF
       LAW ........................................................................................ 33

VIII.  DEFENDANTS CANNOT PROVE THEIR OFFSET AFFIRMATIVE
       DEFENSE AS A SERVICE CHARGE OR ANY OTHER OFFSET ........... 37

X.     CONCLUSION ........................................................................... 40

## TABLE OF AUTHORITIES

CASES

29 U.S.C. § 260 ............................................................................ 34

*Alvaraz Perez v. Sanford-Orlando Kennel Club, Inc.*,

    515 F.3d 1150, 1160 (11th Cir. 2008) ........................................ 30

*Amiable v. Long & Scott Farms*,

    20 F.3d 434, 444 (11th Cir. 1994) .............................................. 28

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242, 248 (1986) ........................................................... 14

*Antenor v. D & S Farms*,

    88 F.3d 925, 929 (11th Cir.1996) ............................................... 15

*Berry v. Great American Dream, Inc.*,

    No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) 19

*Butler v. PP & G, Inc.*,

    2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013) ....................... 20

*Celotex Corp. v. Catrett*,

    477 U.S. 317, 323 (1986) ........................................................... 14

*Clincy v. Galardi South Enter., Inc.*,

    808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) .............................. 19

*Cole v. Farm Fresh Poultry, Inc.*,

    824 F.2d 923, 926 (11th Cir.1987) ............................................. 33

*Collins v. Barney's Barn*, *Inc.*, *et al.*,

    2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) ........................ 20

*Compere v. Nusret Miami, LLC*,

    28 F.4th 1180 (11th Cir. 2022) .................................................. 37

*Crawford-El v. Britton*,

    523 U.S. 574, 600 (1998) ........................................................... 15

*Davila v. Menendez*,

717 F.3d 1179, 1186 (11th Cir. 2013) ........................................................ 34

*Donovan v. Agnew*,

712 F.2d 1509, 1511 (1st Cir. 1983) ......................................................... 30

*Equal Emp. Opp. Comn'n v. Home Ins. Co.*,

672 F.2d 252, 263-65 (2d Cir.1982) .......................................................... 34

*Espizona v. Galardi South Enterprises*.,

2018 WL 1729757) (S.D. Fl. April 10, 2018) ........................................... 20

*Foster v. Gold & Silver Priv. Club, Inc.*, 2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) ...................................................................................................... 20

*Gardner v. Country Club, Inc.*,

2015 WL 7783556, at *12 (D.S.C. June 3, 2016) ..................................... 20

*Gardner v. Country Club, Inc.*,

No. 4:13-CV-03399-BHH, 2015 WL 7783556, at *19 (D.S.C. Dec. 3, 2015) ................................................................................................................ 35

*Gilbo v. Agment, LLC*,

2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020).......... 18

*Harrell v. Diamond A Entm't, Inc.*,

992 F.Supp. 1343, 1348 (M.D. Fla. 1997) ................................................ 18

*Hart v. Rick's Cabaret Int'l, Inc.*,

967 F.Supp.2d 901, 930 (S.D.N.Y. 2013) .......................................... 20, 37

*Henderson v. 1400 Northside Drive, Inc.*,

110 F.Supp.3d 1318, 1322 (N.D. Ga. 2015).............................................. 37

*Hobbs v. Petroplex Pipe & Constr., Inc.*,

946 F.3d 824 (5th Cir. 2020) .................................................................... 28

*Hurst v. Youngelson*,

354 F.Supp.3d 1362 (N.D. GA 2019) ....................................................... 18

*Josendis v. Wall to Wall Residence Repairs, Inc.*,

662 F.3d 1292, 1298 (11th Cir.2011) ....................................................... 29

*Kimbrel v. DEA Corp.*,

2016 WL 7799340 (E.D. Tenn. August 2, 2016) ...................................... 20

*Lamonica v. Safe Hurricane Shutters, Inc.*,

711 F.3d 1299, 1301 (11th Cir. 2013) ....................................................... 30

*Lester v. Agment, LLC*,

2016 WL 1588654, No. 15cv886 (N.D. Ohio, April 20, 2016) ................ 18

*Levi v. Gulliver's Tavern, Incorporated*,

No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ........... 19

*Martin v. Priba Corp.*,

No. 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. 1992) ........... 20

*Mason v. Fantasy, LLC*,

No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015) ................................................................................................... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986) .......................................................................... 15

*McFeeley v. Jackson St. Ent., LLC*,

47 F. Supp. 3d 260, 279 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) ................................................................................................... 19

*Mednick v. Albert Enterprises, Inc.*,

508 F.2d 297, 300 (5th Cir. 1975) ............................................................ 16

*Morse v. Mer Corp.*,

2010 WL 2346334, at *6 (S.D. Ind. 2010) ............................................... 20

*Olson v. Superior Pontiac-GMC, Inc.*,

765 F.2d 1570, 1579 (11th Cir.), *modified on other grounds*, 776 F.2d 265 (1985) ................................................................................................... 33

*Patel v. Wargo*,

803 F.2d 632, 632 n.1 (11th Cir. 1986) ........................................ 15, 16, 29

*Pizzarelli v. Cadillac Lounge, LLC*,

2018 WL 2971114 (D. R.I. Apr. 13, 2018) .............................................. 19

*Porter v. Ray*,

461 F.3d 1315, 1320 (11th Cir. 2006) ........................................................... 14

*Reich v. Circle C. Investments*, *Inc.*,

    998 F.2d 324, 330 (5th Cir. 1993) .............................................................. 20

*Scantland v. Jeffry Knight, Inc.*,

    721 F.3d 1311 (11th Cir. 2013) .................................................................... 17

*Schofield v. Gold Club Tampa, Inc.*,

    2021 WL 533540 (M.D. Fl. Feb. 2, 2021) .................................................. 18

*Shaw v. Set Enterprises, Inc.*,

    241 F.Supp. 3d 1318, 1326 (S.D. Fla. 2017) ............................................. 27

*Skop v. City of Atlanta*,

    485 F.3d 1130, 1136 (11th Cir. 2007) ....................................................... 15

*Smith v. Wynfield Dev. Co.*,

    451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) ............................................ 35

*Stevenson v. Great American Dream, Inc.*,

    No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) . 19

*Thompson v. Linda and A. Inc.*,

    779 F.Supp.2d 139, 151 (D.D.C. 2011) ..................................................... 20

*Thornton v. Crazy Horse*, *Inc.*,

    2012 WL 2175753 (D. Alaska June 14, 2012) .......................................... 20

*Usery v. Pilgrim Equip. Co. Inc.*,

    527 F.2d 1308, 1311 (5th Cir. 1976) ......................................................... 18

*Vaughn v. Paradise Entm't Group, Inc.*,

    No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) ................... 19

*Verma v. 3001 Castor, Inc.*,

    937 F.3d 221 (3d. Cir. 2019) ..................................................................... 19

*Verma v. 3001 Castor*, *Inc.*,

    No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014) ............ 19

*Villareal v. Woodman*,

113 F.3d 202, 205 (11th Cir. 1997) ........................................................... 21

*Villarreal v. Woodham,*

     113 F.3d 202, 205 (11th Cir. 1997) ........................................................... 15

## STATUTES

29 U.S.C. § 203 ............................................................................................... 3

29 U.S.C. § 206 ............................................................................................... 3

29 U.S.C. § 207 ............................................................................................... 3

29 U.S.C. § 216(b) ........................................... 1, 2, 3, 5, 6, 11, 12, 13, 17

29 U.S.C. § 255(a) ........................................................................................ 13

29 U.S.C. § 256(b) ........................................................................................ 14

29 U.S.C. § 257 ...................................................................................... 10, 11

29 U.S.C. §§ 201, *et seq.* ............................................................................... 1

## RULES

Fed. R. Civ. P. 23 ................................................................................ 1, 12, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Jordan Manasco ("Manasco"), Peyton Mastropolo ("Mastropolo") Katrina Perez ("Perez"), Stephanie Jeronymo ("Jeronymo"), Giddel Endaya Lynn ("Lynn"), Brittany Swan ("Swan"), Kelsey Lucas ("Lucas"), Laurel Hamrick ("Hamrick"), Julianna Edgerton ("J. Edgerton"), Jasmine Dove ("Dove"), Brianna Pettit ("Pettit"), Caitlin Glass ("Glass"), Constance Edgerton ("C. Edgerton"), Laura Slovensky ("Slovensky"), Jessica Campbell ("Campbell"), Miranda Fulcher ("Fulcher") and Nikkita Gordon ("Gordon") (collectively, "Plaintiffs") worked as exotic dancers at "The Furnace" in Birmingham, Alabama between March 12, 2018 and the present. "The Furnace" is an exotic dance club that is owned and operated by defendant Best in Town, Inc. dba The Furnace ("The Furnace" or "the club"). It is solely owned by defendant Gregory L. Jackson, who rents the premises from a company controlled by himself and his brother, defendant Graham G. Jackson, who is the operating manager of The Furnace.

Plaintiffs brought this action seeking to recover wages owed to them after being misclassified as independent contractors at The Furnace under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. *See* Dkt. 27.

Plaintiffs' misclassification is not a close call. Approximately forty (40) district court and circuit court opinions have held, with near unanimity, that exotic dancers are not independent contractors.

Defendants Best in Town, Inc. dba The Furnace and Graham G. Jackson cannot establish any genuine issue of material fact exists as to their liability for misclassification under the FLSA for unpaid wages. As such, Plaintiffs are entitled to judgment as a matter of law, leaving only the issue of damages to be determined as to those two defendants.[1]  Additionally, The Furnace and Graham Jackson cannot establish their good faith affirmative defenses as a matter of law. This requires that any damages be liquidated post-verdict for Plaintiffs' FLSA claims for wages, forced tips and kickbacks.

Plaintiffs' causes of action arise from Defendants' willful actions while employed by Defendants, including Plaintiffs' being denied minimum wage payments as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." Additionally, Defendants illegally absconded with Plaintiffs' tips. Plaintiffs' First Amended Complaint for Damages includes the following causes of action: (1) Failure to Pay Minimum Wages, 29 U.S.C. § 206; (2) Illegal Kickbacks, 29 C.F.R. § 531.35; (4) Unlawful Taking of Tips, 29 U.S.C. § 203; and (4) Forced Tip Sharing, 29 C.F.R. § 531.35. *See* Dkt. 27.[2]

---

[1]  This applies to the first four causes of action applicable to the collective in the First Amended Complaint, not the fifth, sixth and seventh causes of action, which are plaintiff Jordan Manasco's individual retaliation and interference with the FMLA claims. See *Dkt.* 27.

[2]  The First Amended Complaint also includes Manasco's individual claims of retaliation and interference pursuant to 29 U.S.C. § 215 and 29 U.S.C. § 2615. *See* Dkt. 27, pgs. 19-23.

## II.   STATEMENT OF UNDISPUTED FACTS

### (A)   *The Dancers*

Plaintiffs were employed by Defendants at The Furnace at various times between at least 2015 and 2021. *See* Dkt. 27, pg. 7, ¶ 35-38. Manasco worked at The Furnace as a dancer from approximately 2017 to March 4, 2021. *See* Ex. 1 (Manasco Decl.) at ¶ 3. Mastropolo worked at The Furnace as a dancer between March 2018 and January 2021. *See* Ex. 2 (Mastropolo Decl.) at ¶ 3. Perez worked at The Furnace as a dancer from approximately June 2019 to January 2021. *See* Ex. 3 (Perez Decl.) at ¶ 3. Jeronymo worked at The Furnace as a dancer between July 21, 2018 and May 15, 2021. *See* Ex. 4 (Jeronymo Decl.) at ¶ 3.

Lynn worked at The Furnace as a dancer between August 2018 and December 2019. *See* Ex. 5 (Lynn Decl.) at ¶ 3. Swan worked at The Furnace as a dancer between February 2021 and August 2021. *See* Ex. 6 (Swan Decl.) at ¶ 3. Lucas worked at The Furnace as a dancer between August 2018 and February 2019. *See* Ex. 7 (Lucas Decl.) at ¶ 3. Hamrick worked at The Furnace as a dancer between August 2020 and May 2022. *See* Ex. 8 (Hamrick Decl.) at ¶ 3. J. Edgerton worked at The Furnace as a dancer between May 2019 to March 2020. *See* Ex. 9 (J. Edgerton Decl.) at ¶ 3. Dove worked at The Furnace as a dancer between May 2019 to July 2019. *See* Ex. 10 (Dove Decl.) at ¶ 3. Petitt worked at The Furnace as a dancer between 2017 and 2019. *See* Ex. 11 (Pettit Decl.) at ¶ 3. Glass worked at The Furnace as a dancer between May 2019 to December 2021. *See* Ex. 12 (Glass

Decl.) at ¶ 3. C. Edgerton worked at The Furnace as a dancer between May 2019 to December 2019. *See* Ex. 13 (C. Edgerton Decl.) at ¶ 3. Slovensky worked at The Furnace as a dancer between June 2019 to March 2020. *See* Ex. 14 (Slovensky Consent Form). Campbell worked at The Furnace as a dancer between January 2019 to June 2022. *See* Ex. 15 (Campbell Decl.) at ¶ 3. Gordon worked at The Furnace as a dancer between May 2020 and August 2020. *See* Ex. 16 (Gordon Decl.) at ¶ 3.

### (B)   *The Furnace Ownership and Operations*

Defendant Gregory L. Jackson has solely owned The Furnace, the trade name of "Best In Town, Inc." since its incorporation in 1999. *See* Ex. 17 (Deposition of Gregory L. Jackson) (Gregory Jackson Dep.) at 11:25-12:13. The landlord for the Furnace is the Downtowner, LLC. *See* Ex. 17 (Gregory Jackson Dep.) at 12:14-20. Defendants Gregory L. Jackson and Graham G. Jackson are the sole owners of the Downtowner, LLC. Graham G. Jackson is the majority owner of Downtowner, LLC. *See* Ex. 17 (Gregory Jackson Dep.) at 12:21-13:4. The club pays Downtowner, LLC $36,000 in rent each month. *See* Ex. 23 (Deposition of Jenny Sartain) (Sartain Dep.) at 15:17-22, 22:2-11, 25:2-10.

Since Gregory L. Jackson opened The Furnace in 1999, he has classified Furnace dancers as independent contractors. *See* Ex. 17 (Gregory Jackson Dep.) at 16:2-5. Neither Jackson brother had prior experience in adult entertainment clubs before opening The Furnace. *See* Ex. 18 (Deposition of Graham G. Jackson)

(Graham Jackson Dep.) at 17:14-21.

Defendant Gregory L. Jackson is the lone director of Best in Town, Inc., and he attends corporate meetings by himself. *See* Ex. 17 (Gregory Jackson Dep.) at 21:23-22:7. His brother, defendant Graham G. Jackson is the primary manager at The Furnace. *See* Ex. 17 (Gregory Jackson Dep.) at 22:8-10. Defendant Graham G. Jackson has worked at the Furnace since 2015. *See* Ex. 18 (Graham Jackson Dep.) at 14:8-19.

Defendant Graham G. Jackson has the final say on club's rules, "except for my brother [defendant Gregory L. Jackson]." *See* Ex. 18 (Graham Jackson Dep.) at 21:10-15. On more important decisions, Gregory L. Jackson consults with his younger brother, Graham G. Jackson. *See* Ex. 18 (Graham Jackson Dep.) at 21:16-22:2.

Manager Christian Bermudez reports to his direct boss, defendant Graham G. Jackson. *See* Ex. 20 (Deposition of Christian Bermudez) (Bermudez Dep.) at 12:14-13:8; 14:2-7; 18:2-6. Manager Johnny Scruggs also reports to the operations manager, defendant Graham G. Jackson. *See* Ex. 21 (Deposition of Johnny Scruggs) (Scruggs Dep.) at 16:10-17:12. Mr. Scruggs testified that Mr. Jackson, the operations manager, sets policies and procedures and is his boss. *See* Ex. 21 (Scruggs Dep.) at 17:13-19:9; 30:15-19.

**(C)**   ***Plaintiffs Are Integral to The Furnace's Business***

The Furnace is an adult exotic gentlemen's club in Birmingham, Alabama where topless dancers are the primary form of entertainment. *See* Ex. 1 (Manasco Decl.) at ¶ 2. Dancers are the main attraction at the Furnace, enticing customers with good looks, dances, and private dances. *See* Ex. 23 (Sartain Dep.) at 50:13-19. Dancers are therefore an integral part of The Furnace's business. *See* Ex. 17 (Gregory L. Jackson Dep.) at 37:22-25.

**(D)**   ***The Furnace Advertises the Dancers' Attractiveness & Does Not Require Any Specialized Skills***

The Furnace has no requirement that the dancers have any certificate in dance. *See* Ex. 18 (Graham G. Jackson Dep.) at 29:16-30:6. Further, Plaintiffs' local municipal licenses certify their ages, not their dancing abilities. *See* Ex. 21 (Scruggs Dep.) at 41:10-11. The Furnace's website, thefurnacebham.com, boasts that The Furnace has "[t]he sexiest women in the South" and it "features the best dancers in the Southeast. Blonde, brunette, or red head – whatever you have an appetite for – we have them – the Southeast's most talented and beautiful women!!!" *See* Ex. 21 (Scruggs Dep.) at 52:5-53:3; *see also* Ex. 21 (Scruggs Dep.) at 51:14-15.

**(E)**   ***The Furnace Charges Dancers for the Right to Work – House Fees & Dancers Subsidize The Furnace's Payments to DJs***

The Furnace charged Plaintiffs to work. The Furnace also forced Plaintiffs to pay kickbacks to Defendants. *See* Ex. 1 (Manasco Decl.) at ¶ 6; (Mastropolo Decl.)

at ¶ 6. (Perez Decl.) at ¶ 4; Ex. 4 (Jeronymo Decl.) at ¶ 4. Defendant Graham G.

Jackson set up the house fee system. *See* Ex. 23 (Sartain Dep.) at 14:11-16, 32:12-

14. The prices have varied over time but ranged from approximately $45 to $65 a

night depending on when the dancer arrived to work. *See* Ex. 21 (Scruggs Dep.) at

44:4-22; Ex. 23 (Sartain Dep.) at 32:8-11. The Furnace charged more if a dancer

arrived later to encourage dancers to arrive earlier. *See* Ex. 21 (Scruggs Dep.) at

44:23-45:5.

The Furnace does not pay its DJs. *See* Ex. 21 (Scruggs Dep.) at 37:7-11.

Instead, the dancers subsidize the Furnace's obligation to pay its DJs, requiring

dancers to compensate DJs exclusively through their tips. *Id*. The DJ reports to the

managers and ultimately defendant Graham Jackson. *See* Ex. 21 (Scruggs Dep.) at

56:14-17.

### (F) *The Furnace and Graham L. Jackson Control the Dancers, who have no Management Role*

The Furnace has a written set of rules titled "The Furnace Rules." *See* Ex. 18

(Graham Jackson Dep.) at 55:15-57-7; *See* Ex. 19 (The Furnace Rules). These

rules apply to all dancers. Graham G. Jackson created "The Furnace Rules." *See*

Ex. 23 (Sartain Dep.) at 35:19-12. Besides requiring dancers to comply with local

nudity-related ordinances, The Furnace Rules require: [dancer's] appearance to be

perfect, with specific details, and examination by the house mom before they can

perform (Furnace Rule 4); they cannot carry a Crown Royal bag as a purse

(Furnace Rule 5); dancers need to change outfits throughout the night (Furnace Rule 6); dancers must listen to the DJ and make sure they are on time for their stages (Furnace Rule 11); dancers cannot leave a stage, until the next dancer arrives (Furnace Rule 12); dancers are limited to two drinks a night (Furnace Rule 13). *See* Ex. 18 – (The Furnace Rules).

Further, the house mom, an employee who scheduled the dancers and them in before each shift, takes the dancers' car keys before they start working as part of The Furnace's policies. *See* Ex. 20 (Bermudez Dep.) at 16:8-17. Dancers could be suspended for not following the rules. *See* Ex. 24 (Deposition of Donna Bozeman) (Bozeman Dep.) at 24:6-8. Defendant Graham Jackson made suspension decisions. *See* Ex. 24 (Bozeman Dep.) at 24:9-15.

The Furnace management also judged dancers regarding their looks. For example, Donna Bozeman texted Peyton Mastropolo, whose stage name was Luna: "Hey, Luna, get your nails done before you come back… Your nails should not look like that." *See* Ex. 24 (Bozeman Dep.) at 35:17-36:7; *See* Exhibit 25 (Text from Bozeman to Plaintiff Peyton Mastropolo).

When dancers begin their employment at The Furnace, they are required to sign a document titled "Things You Should Know As An Independent Contractor." *See* Ex. 21 (Scruggs Dep.) at 75:20-76:14, 78:4-:17; Ex. 22 (Independent Contractor Label). The document states: "[i]t is our policy that entertainers will work a minimum of 4 [sic] days a week unless prior written approval has been

given." *See* Ex. 22 (Independent Contractor Label). The dancers were required to work four shifts a week. *See* Ex. 24 (Bozeman Dep.) at 31:8-11; *See* Ex. 1 (Manasco Decl.) at ¶ 7.

The house mom, Donna Bozeman, would coordinate the weekly schedules for Plaintiffs and other dancers. *See* Ex. 24 (Bozeman Dep.) at 21:12-22:24. If they did not have enough dancers, Ms. Bozeman would contact them to schedule an extra shift. *See* Ex. 24 (Bozeman Dep.) at 52:22-53:19.

The Furnace also charges Plaintiffs "late fees" if they arrived late to work. *See* Ex. 24 (Bozeman Dep.) at 41:1-42:3; *See* Ex. 26 (Manasco Text); *See* Ex. 1 (Manasco Decl.) at ¶ 7. Defendant Graham Jackson established this policy. *See id.* If Plaintiffs failed to show up for a scheduled shift, Furnace management required Plaintiffs to pay house fees for the missed shift. *See* Ex. 24 (Bozeman Dep.) at 43:3-44:2. For example, Plaintiff Mastropolo needed to schedule an appointment with a kidney doctor for her child. Ex. 27 (Mastropolo Oct. 6 Text). In response, Furnace management explained "That sounds like stuff you do before 6 PM. You will owe for today. I will get it from you next week. I will give you the same schedule for next week that you have for this week." *See* Ex. 24 (Bozeman Dep.) at 58:5-61:7; Ex. 27.

Once Plaintiffs check in with the house mom before their scheduled shift, the DJ adds them to his "rotation," informing dancers are they are up next. *See* Ex. 20 (Bermudez Dep.) at 24:4-25:5; *See* Ex. 24 (Bozeman Dep.) at 23:22-24:5. At

this point, "[they've] got to get up on stage next." *Id*. The dancers are then required to dance for two songs. *Id*. By the end of the second song, the dancers are required to take their tops off. *See* Ex. 21 (Scruggs Dep.) at 56:22-57:10; *See* Ex. 1 (Manasco Decl.) at ¶ 8. *See* Ex. 2 (Mastropolo Decl.) at ¶ 8. If Plaintiffs do not follow The Furnace's rules, management may suspended them. *See* Ex. 24 (Bozeman Dep.) at 24:6-8.

### (G)   *The Dancers Have No Opportunity for Profit of Loss Based on Their Managerial Skills*

The Plaintiffs were not permitted to hire other dancers to work for them, like electricians, for example. *See* Ex. 21 (Scruggs Dep.) at 80:23-81:13. The dancers have no managerial responsibilities, and thus cannot profit from their own management of others. *See* Ex. 21 (Scruggs Dep.) at 80:1-16 *See* Ex. 1 (Manasco Decl.) at ¶ 15.

### (H)   *The Furnace Pays for and Controls the Premises*

The club, not Plaintiffs, purchased three stages via Downtowner, LLC. *See* Ex. 18 (Graham Jackson Dep.) at 24:3-25:7. The club installed the poles on the sages. The club owns the PA system used by the DJ. *See* Ex. 21 (Scruggs Dep.) at 67:9-17. The dancers do not pay the club's utilities bills or the club's insurance. *See* Ex. 21 (Scruggs Dep.) at 72:15-17; 73:6-14; Ex. 23 (Sartain Dep.) at 24:2-15. The club pays the ASCAP fee for the rights to play music at the club, which it uses for Plaintiffs' performances. *See* Ex. 21 (Scruggs Dep.) at 68:23-69:4. The club

also controls the content of the music. *See* Ex. 21 (Scruggs Dep.) at 69:10-23.

Importantly, the club controls which customers may enter the Furnace. *See* Ex. 18 (Bermudez Dep.) at 17:15-18:1; *See* Ex. 21 (Scruggs Dep.) at 71:2-10. If a dancer has a dispute with a customer, The Furnace managers, not Plaintiffs, determine whether customers leave the Furnace. *See* Ex. 18 (Graham Jackson Dep.) at 33:2-13; *See* Ex. 21 (Scruggs Dep.) at 71:11-72:14; Ex. 20 (Bermudez Dep.) at 20:9-21:6.

Graham and Gregory Jackson determined that the club would operate from 4:00 p.m. to 2:00 a.m. on weeknights and until 4:00 a.m. on weekends. *See* Ex. 18 (Graham Jackson Dep.) at 22:11-23:7. There are no customers for dancers to perform at other times, even if the dancers wanted to work. *See* Ex. 18 (Graham Jackson Dep.) at 23:16-24:2. Plaintiffs were not involved in setting the club's hours and when they could work. *See* Ex. 21 (Scruggs Dep.) at 32:18-20; *See* Ex. 1 (Manasco Decl.) at ¶ 5. Plaintiffs could only work when the Furnace decided to open. *See* Ex. 1 (Manasco Decl.) at ¶ 4.

When plaintiff Payton Mastropolo injured her ankle, she was covered under Workers' Compensation. *See* Ex. 2 (Mastropolo Decl.) at ¶ 18. Scruggs contacted defendant Graham Jackson, who said she was covered and to let Ms. Mastropolo know before she went to the hospital. *See* Ex. 21 (Scruggs Dep.) at 81:16-82:2.

**(I)    *Dancers Receive Payment Directly From Furnace Customers –
Service Charges***

At The Furnace, customers can purchase two types of dance experiences:
private dances or private rooms. In the private rooms, customers are charged in
units of time. Customers pay for a private dance on a per-song basis. *See* Ex. 20
(Bermudez Dep.) at 22:14-19. The club, via Graham Jackson, sets the base price
for private dances at $20 per song. *See* Ex. 21 (Scruggs Dep.) at 28:17-22; 30:11-
14; *See* Ex. 1 (Manasco Decl.) at ¶ 9. Defendant Graham Jackson also set the
baseline prices for the Private Rooms, aka "VIP Rooms." *See* Ex. 21 (Scruggs
Dep.) at 30:9-10.

Customers pay the dancers separately from The Furnace. *See* Ex. 21
(Scruggs Dep.) at 29:16-30:8 *See* Ex. 1 (Manasco Decl.) at ¶ 9. When Plaintiffs
provide dances to Furnace customers, Plaintiffs receive payment directly from
Furnace customers, not management. *See* Ex. 23 (Sartain Dep.) at 39:3-9; *See* Ex.
1 (Manasco Decl.) at ¶ 9-10. The Point-of-Sale ("POS") system does not identify
how much income Plaintiffs receive for dances. *See* Ex. 21 (Scruggs Dep.) at
25:17-26:13. Further, the POS system does not identify what dancers are present
when The Furnace receives income. Nor does it track money that customer pay for
private dancers. *See* Ex. 21 (Scruggs Dep.) at 33:5-34:9.

**(J)** ***Defendants Failed to Learn the Dictates of the FLSA and Attempt to Adopt Them***

Defendants claim that, in 1999, defendant Graham G. Jackson went to a municipal government, the City of Birmingham, to learn about the FLSA. *See* Ex. 17 (Gregory Jackson Dep.) at 17:10:25. Defendants indicated in an obtuse and vague discovery response that the Jackson brothers went in 1999 to the City of Birmingham and received advice from lawyers about the FLSA.

Also, there was a post in 2021 on the City of Birmingham's website about dancers obtaining licenses. Nothing in that post involves federal law. *See* Ex. 28 (Defendants' Supplemental Responses to Interrogatories, Interrogatories 3 and 4). Defendants also received information from a now-deceased attorney, but do not recall if there was any documentation regarding the classification of dancers, or if their attorney ever informed them of the plethora of decisions in federal courts holding that exotic dancers are employees. *See* Ex. 17 (Gregory Jackson Dep.) at 18:1-11. *See* Ex. 18 (Graham Jackson Dep.) at 18:17-20:10.

Defendant Graham G. Jackson testified that, as far as he knew, obtaining a business license and manifested intent "not [to be] an employee" transmogrifies dancers into independent contractors. *See* Ex. 18 (Graham Jackson Dep.) at 41:12-16.

The City of Birmingham has no records from 2012 to the present of any communications with The Furnace, including exotic dancer licensing issues, other

than the application and granting of relevant business licenses. *See* Ex. 29

(Declaration of Elton Hammonds of the City of Birmingham) (Birmingham Decl.)

at ¶ 3. The City of Birmingham does not provide businesses with advice regarding

compliance with the Fair Labor Standards Act. *See* Ex. 29 (Birmingham Decl.) at ¶

4. Nor does the City of Birmingham provide businesses with advice regarding how

to legally engage an independent contractor. *See* Ex. 29 (Birmingham Decl.) at ¶ 5.

The municipal license is for the purposes of conducting City Business and is not

intended to advise business owners regarding their obligations under the FLSA.

*See* Ex. 29 (Birmingham Decl.) at ¶ 5. Neither payment of the occupational permit

nor possession of the individual permit and license render a dancer an independent

contractor. The City of Birmingham has not advised The Furnace to the contrary.

*See* Ex. 29 (Birmingham Decl.) at ¶ 7-8.

## III.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect

the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the

record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the burden shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes that preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

Whether the Plaintiffs are "employees" under the FLSA is a question of law for the Court. *See Antenor v. D & S Farms,* 88 F.3d 925, 929 (11th Cir.1996) ("A determination of employment status under the FLSA . . . is a question of law. . . ."); *Patel v. Wargo,* 803 F.2d 632, 634 n. 1 (11th Cir.1986) ("The weight of authority in other circuits supports our characterization of the question as one of

law, with the subsidiary findings being issues of fact."); *Villarreal v.*

*Woodham,* 113 F.3d 202, 205 (11th Cir. 1997).

## IV. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF MISCLASSIFICATION AS INDEPENDENT CONTRACTORS

Plaintiffs' claims are centered on their misclassification as independent

contractors. Time and time again, circuit courts and district courts have ruled, in

near unanimity, that exotic dancers are employees, not independent contractors.

Plaintiffs moves for summary judgment on the issue of whether they are

employees under the FLSA, and that The Furnace and Graham G. Jackson were their

employers. In the Complaint, Plaintiffs allege that they worked for Defendants at

The Furnace located in Birmingham, Alabama. Defendants do not dispute this fact.

The requirements of the FLSA apply only to employees, not independent

contractors. The FLSA defines "employee" as "any individual employed by an

employer." 29 U.S.C. § 203(e)(1). The FLSA defines "to employ" as "to suffer or

permit to work." 29 U.S.C § 203(g), and an "employer" as "any person acting . . . in

the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The

purpose of the FLSA is to "protect those whose livelihood is dependent upon finding

employment within the business of others." *Mednick v. Albert Enterprises, Inc.*, 508

F.2d 297, 300 (5th Cir. 1975).[3] The determination of whether a worker is an

---

[3] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

employee or an independent contractor is a question of law for the Court. *Patel v. Wargo*, 803 F.2d 632, 632 n.1 (11th Cir. 1986).

Whether an individual is an FLSA-covered "employee" or exempted "independent contractor," turns on the "economic reality" of the relationship between the alleged employee and alleged employer. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1311 (11th Cir. 2013). The Eleventh Circuit established the following six-factor test to guide the "economic reality" inquiry, which focus on economic dependence: (1) the nature and degree of the alleged employer's control as to the manner the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required to her task, or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Id.* at 1311-12. These six factors are not exclusive and no single factor is dominant. *Id.* ("We view the subsidiary facts relevant to each factor through the lens of 'economic dependence' and whether they are more analogous to the 'usual path' of an employee or an independent contractor.").

Moreover, the parties' subjective beliefs and expectations, as well as the labels they place on their relationship, are immaterial. ("This inquiry is not governed by

the 'label' put on the relationship by the parties or the contract controlling the relationship.) *See id.* at 1311.

"Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for [herself]' or is 'dependent upon finding employment in the business of others.'" *Scantland*, 721 F.3d at 1311-12 (citing *Mednick*, 508 F.2d at 301-302). In its consideration of this issue, the Court should not assume that a worker is an independent contractor because he or she has some characteristics of an independent contractor. *Mednick*, 508 F.2d at 302. Doing so would allow employers to get around the goals and intent of the FLSA by granting workers some independence who are, in reality, dependent on their employer's business. *Usery v. Pilgrim Equip. Co. Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976).

Exotic dance clubs' independent contractor arguments have been summarily rejected by district courts and circuit courts across the United States. The overwhelming majority of courts to consider this issue have determined that exotic dancers are employees under the FLSA. *See Schofield v. Gold Club Tampa, Inc.*, 2021 WL 533540 (M.D. Fl. Feb. 2, 2021) (granting partial summary judgment on issue of classification); *Gilbo v. Agment, LLC*, 2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020) (summary judgment for plaintiffs) (upheld by Sixth Circuit in *Gilbo v. Agment, LLC*, 831 Fed.Appx. 772 (6t Cir. 2020); *Lester v. Agment, LLC*, 2016 WL 1588654, case no. 15cv886 (N.D. Ohio, April 20, 2016) (granting summary judgment for plaintiffs under FLSA and Ohio law); *Hurst v.*

*Youngelson*, 354 F.Supp.3d 1362 (N.D. GA 2019) – (summary judge for dancers, individual owners are employers, fees from customers were tips, not service charge); *Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997) (There is no debate, as a matter of law, that exotic dancers such as the putative class members in this matter are "employees" under the FLSA); *Clincy v. Galardi South Enter., Inc.*, 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Stevenson v. Great American Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc.*, No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) (summary judgment for plaintiff); *Dean v. 1715 Northside Drive, Inc.*, No. 1:14-CV-03775-CAP, Dkt. 102 (N.D. Ga. Jan. 14, 2017) (same); *McFeeley v. Jackson St. Ent.*, *LLC*, 47 F. Supp. 3d 260, 279 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) ("Considering all six factors together, particularly the defendants' high degree of control over the dancers, the totality of circumstances speak clearly to an employer-employee relationship."); *Pizzarelli v. Cadillac Lounge, LLC*, 2018 WL 2971114 (D. R.I. Apr. 13, 2018) (granting summary judgment for plaintiffs under FLSA and Rhode Island law); *Mason v. Fantasy*, *LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor*,

*Inc*., No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014) (*aff'd by the Third Circuit in Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d. Cir. 2019): *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA); *Hart v. Rick's Cabaret Int'l, Inc*., 967 F.Supp.2d 901, 912-913 (S.D.N.Y. 2013) (granting summary judgment for plaintiffs under FLSA and New York law); *Collins v. Barney's Barn, Inc., et al*.,  2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) (granting summary judgment for plaintiffs under FLSA); *Butler v. PP & G, Inc*., 2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013) *reconsideration denied*, 2014 WL 199001 (D. Md. Jan. 16, 2014) (same); *Thornton v. Crazy Horse, Inc*., 2012 WL 2175753 (D. Alaska June 14, 2012); *Thompson v. Linda and A. Inc*., 779 F.Supp.2d 139, 151 (D.D.C. 2011) (granting summary judgment for plaintiffs under FLSA and District of Columbia law); *Morse v. Mer Corp*., 2010 WL 2346334, at *6 (S.D. Ind. 2010); *Foster v. Gold & Silver Priv. Club, Inc.*, 2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) (noting that courts have consistently found exotic dancers to be employees under the FLSA despite the commonly transient nature of the industry); *Martin v. Priba Corp*., No. 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. 1992) (denies employer's summary judgment and grants, *sua sponte*, partial summary judgment for plaintiff); *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 330 (5th Cir. 1993); *Espizona v. Galardi South Enterprises*., 2018 WL 1729757) (S.D. Fl. April 10,

2018) (Dancers are Employees on Cross Motions for Summary Judgment);

*Gardner v. Country Club, Inc.*, 2015 WL 7783556, at *12 (D.S.C. June 3, 2016)

(granting partial summary judgment for plaintiffs under FLSA); *Kimbrel v. DEA*

*Corp.* , 2016 WL 7799340 (E.D. Tenn. August 2, 2016) (granting partial summary

judgment for plaintiffs under FLSA).

## V.   PLAINTIFFS WERE/ARE EMPLOYEES UNDER ECONOMIC REALITIES TEST

### A.   The Furnace Exercised Significant Control Over Dancers, including Plaintiffs

The Eleventh Circuit has found that the following factors, among others, are

relevant to the control inquiry: "whether the alleged employer (1) had the power to

hire and fire the employee, (2) supervised and controlled employee work schedules

and conditions of employment, (3) determined the rate and method of payment,

and (4) maintained employment records." *Villareal v. Woodman*, 113 F.3d 202,

205 (11th Cir. 1997).

Defendants exercised significant control over Plaintiffs. Defendants created

and enforced The Furnace Rules, policies, and procedures. Defendants required

dancers to work only during the hours set by the club. *See* Ex. 18 (Graham Jackson

Dep.) at 22:11-23:7; 23:16-24:2; *See* Ex. 21 (Scruggs Dep.) at 32:18-20; *See* Ex. 1

(Manasco Decl.) at ¶ 4-5. Furnace management could suspend Plaintiffs for not

following the rules. *See* Ex. 24 (Deposition of Donna Bozeman) (Bozeman Dep.) at

24:6-8. In order to work as a dancer at the Furnace, Plaintiffs were required to sign

the document "Things You Should Know As an Independent Contractor" which permitted the Furnace to "hire … as they deem necessary" and terminate at will. *See* Ex. 21 (Scruggs Dep.) at 75:20-76:14, 78:4-:17; Ex. 22 (Independent Contractor Label).

Defendants also controlled the conditions under which Plaintiff worked. The house mom, Donna Bozeman, set Plaintiffs' weekly schedules. *See* Ex. 24 (Bozeman Dep.) at 21:12-22:24. To this end, The Furnace required Plaintiffs to work four shifts per week. *See* Ex. 24 (Bozeman Dep.) at 31:8-11; Ex. 1 (Manasco Decl.) at ¶ 7. If they did not have enough dancers, Ms. Bozeman would contact Plaintiffs to schedule an extra shift. *See* Ex. 24 (Bozeman Dep.) at 52:22-53:19.

Further, Plaintiffs would be charged "late fees," i.e., fined, if they arrived late to work based on instructions by defendant Graham Jackson. *See* Ex. 24 (Bozeman Dep.) at 41:1-42:3; *See* Ex. 26 (Manasco Text); Ex. 1 (Manasco Decl.) at ¶ 7. If Plaintiffs failed to show up for a scheduled shift, they would be required to pay house fees for that missed shift. *See* Ex. 24 (Bozeman Dep.) at 43:3-44:2. The Furnace charged higher house fees to encourage dancers to arrive earlier, with the house fee increasing the later a dancer arrived to work. *See* Ex. 21 (Scruggs Dep.) at 44:23-45:5.

Once Plaintiffs checked in with the house mom, the DJ adds them to the "rotations." (Bozeman Depo.) The DJ's rotation determines when Plaintiffs are told they are up next, at which point "[they've] got to get up on stage next." The

dancers are then required to dance for two songs. *See* Ex. 20 (Bermudez Dep.) at 24:4-25:5; *See* Ex. 24 (Bozeman Dep.) at 23:22-24:5. By the end of the second song, the dancers are required to take their tops off. *See* Ex. 21 (Scruggs Dep.) at 56:22-57:10; Ex. 1 (Manasco Decl.) at ¶ 8. *See* Ex. 2 (Mastropolo Decl.) at ¶ 8. The Furnace also set the base prices for all dances Plaintiffs performed for Furnace customers. *See* Ex. 21 (Scruggs Dep.) at 28:17-22; 30:11-14; 30:9-10. *See* Ex. 1 (Manasco Decl.) at ¶ 9.

In sum, it is undisputed Defendants exerted significant control over how Plaintiffs performed their duties at The Furnace. Though Defendants may claim that Plaintiffs could choose which customer to dancer for and part of her work schedule, a small measure of discretion, does not mean that dancers are elevated to the status of independent contractors. *See Harrell*, 992 F.Supp. at 1349. As the *Harrell* Court stated, "the nature of a dancer's job requires some measure of discretion and flexibility." *Id.* The ultimate question is whether Plaintiffs exerted meaningful control over part of the business, which is a resounding no. As summarized by the *Reich* Court:

> [T]he real touchstone is the reality of the employment relationship. An entertainer at Cabaret Royale is **completely dependent on the club for her earnings. The club controls all advertising, without which the entertainers could not survive. Moreover, the defendants created and control the atmosphere and surroundings at the Cabaret Royale, the existence of which dictates the flow of customers into the club.** An entertainer can be considered an independent contractor

only if she "exerts such control over a meaningful part of the business that she stands as a separate economic entity." **In this case, the entertainer's economic status is inextricably linked to those conditions over which defendants have complete control.**

*Reich*, 890 F.Supp. at 592 (emphasis added).

Plaintiffs danced at The Furnace pursuant to the rules, policies, and procedures established by Defendants, which encompassed all aspects of Plaintiffs' work. As such, this factor weighs in favor of a finding that Plaintiffs were Defendants' employees.

### B.  Defendants Were in Control of Plaintiffs Opportunity for Profit or Loss Based on Their Managerial Skills

The second factor is Plaintiffs' opportunity for profit or loss depending on her managerial skill. *Scantland*, 721 F.3d 1311.

Plaintiffs were not permitted to hire other dancers to work for them, like electricians, for example. *See* Ex. 21 (Scruggs Dep.) at 80:23-81:13. Plaintiffs had no managerial responsibilities, and as a result of that cannot profit from their own management of others. *See* Ex. 21 (Scruggs Dep.) at 80:1-16 *See* Ex. 1 (Manasco Decl.) at ¶ 15. Plaintiffs were entirely dependent on Defendants ability to attract customers, as well as Defendants' providing building in which to work. And, as explained previously, Defendants set the prices that Plaintiffs could charge Furnace customers for a dance. *See* Ex. 21 (Scruggs Dep.) at 28:17-22; 30:11-14; 30:9-10. *See* Ex. 1 (Manasco Decl.) at ¶ 9.

Defendants' control over the base prices lessened Plaintiffs' ability to negotiate prices, as well as Plaintiffs' control over profits and loss. Based on the undisputed facts, Defendants controlled all aspects of The Furnace's operation and thus were in primary control of Plaintiffs' opportunity to profit from their employment with The Furnace.

Plaintiffs expect Defendants to argue that Plaintiffs could "hustle" to sell more dances, and therefore exercised control over their opportunity for profit and loss. However, this is akin to an eager waiter — who is indisputably an employee — selling the high-priced menu items as a restaurant. *See Harrell*, 992 F.Supp. at 1351-52

Defendants' opportunity for profit or loss was far greater than Plaintiffs' opportunity for profit or loss. This factor thus weighs in favor of the finding that Plaintiffs were Defendants' employee.

### C.     Defendants' Investments in The Furnace Greatly Exceed Plaintiffs' Investments

The third factor — the parties' relative investment — greatly weighs in Plaintiffs' favor. Indeed, Defendants paid $36,000 per month to rent the space where Defendants operate The Furnace. *See* Ex. 23 (Deposition of Jenny Sartain) (Sartain Dep.) at 15:17-22, 22:2-11, 25:2-10. Defendants purchased three stages via Downtowner LLC to use in operating The Furnace's business. *See* Ex. 18 (Graham Jackson Dep.) at 24:3-25:7. Defendants installed purchased and installed

poles on the sages for Plaintiffs to use while performing their duties at The Furnace. Defendants also own the PA system that the DJ uses to entertain customers and allow Plaintiffs to perform on stage at The Furnace. *See* Ex. 21 (Scruggs Dep.) at 67:9-17. Plaintiffs do not pay Defendants' utilities bills or insurance premiums. *See* Ex. 21 (Scruggs Dep.) at 72:15-17; 73:6-14; *See* Ex. 23 (Sartain Dep.) at 24:2-15. Furthermore, Defendants pay the ASCAP fee for the rights to play music at The Furnace while customers are present and Plaintiffs work. *See* Ex. 21 (Scruggs Dep.) at 68:23-69:4. Defendants also control the content of the music played while customers are present and Plaintiffs work. *See* Ex. 21 (Scruggs Dep.) at 69:10-23.

Courts that have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment. *See Reich*, 998 F.2d at 328 ("A dancer's investment in costumes and a padlock is relatively minor to the considerable investment [the club] has in operating a nightclub" and the club's investment is "obvious."); *see also Reich*, 890 F.Supp. at 593 (entertainers make no investment aside from choosing what clothing to wear, and "but for defendants' provision of a lavish work environment, the entertainers at the club likely would earn nothing."). Accordingly, this factor leans in favor of an employer-employee relationship between Plaintiffs and The Furnace.

D.     **No Special Skill Is Required to Provide Adult Entertainment Dances**

The fourth factor under the economic realities test is whether the service rendered requires a special skill. This factor weighs decidedly in Plaintiffs' favor.

Moreover, district courts in this circuit, and throughout the nation, find in short order that exotic dancing does not require specialized skill. *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011) ("[S]pecial skills are not required to perform as an entertainer at [strip club] Onyx); *Shaw v. Set Enterprises, Inc.*, 241 F.Supp. 3d 1318, 1326 (S.D. Fla. 2017) ("Defendants did not require the Dancers to have the kind of special skill that would bring them outside the FLSA's definition of an employee.")

The Furnace has no requirement that Plaintiffs have any certificate in dance, or other formal education or training. Plaintiffs were qualified to work as dancers at the Furnace because they were able to dance seductively, enticing customers to patronize The Furnace. Moreover, Plaintiffs' local municipal licenses certify their age, not their dancing abilities. *See* Ex. 18 (Graham Jackson Dep.) at 29:16-30:6. *See* Ex. 21 (Scruggs Dep.) at 41:10-11. The club boasts Plaintiffs' attractiveness, not their tango capabilities. *See* Ex. 21 (Scruggs Dep.) at 52:5-53:3. Plaintiffs therefore possessed no special skill that would set them apart as independent contractors under the FLSA. *Harrell*, 992 F.Supp. at 1351. This factor consequently tilts heavily in favor of finding an employer-employee relationship

between Plaintiffs and The Furnace.

### E.  Defendants Hired Plaintiffs to Work at The Furnace Indefinitely

The fifth factor under the economic realities test is the degree of permanency and duration of the working relationship.

Relationships with a club that extend over one year can signify permanence. *See Clincy, Inc.*, 808 F.Supp.2d at 1348. On the other hand, relationships that are established on a project-by-project basis, or have some other temporal limitation by their terms, are more suggestive of independent contractor status. *See Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824 (5th Cir. 2020).

Plaintiffs worked at The Furnace for years; in fact, some Plaintiffs worked at The Furnace as long as three years. *See* Exs. 1-16, ¶ 3. Furthermore, Defendants' own testimony demonstrates that Plaintiffs could work at The Furnace until they decided to no longer do so or Defendants "fired" her for failure to comply with The Furnace's rules, policies, and procedures, or any other reason. *See* Ex. 21 (Scruggs Dep.) at 75:20-76:14, 78:4-:17; *See* Ex. 22 (Independent Contractor Label).  As such, Plaintiffs' work relationship with Defendants was indefinite by its terms. *See Clincy, Inc.*, 808 F.Supp.2d at 1348. This factor weighs in favor of finding an employer-employee relationship between Plaintiffs and The Furnace.

### F.  Plaintiffs Provided an Integral Part of Defendants' Business

The sixth factor under the economic realities test is the extent to which the service rendered is an integral part of the alleged employer's business.  *Amiable v.*

*Long & Scott Farms*, 20 F.3d 434, 444 (11th Cir. 1994). Though Defendants may make the ludicrous argument that Plaintiffs did not provide an essential function at The Furnace, an adult gentlemen's club, other courts have found — in short order — that dancers do, in fact, provide are integral to topless nightclubs. After all, Gregory Jackson admitted that Plaintiffs' services are an integral part of the Furnace's business. Ex. 17 (Gregory Jackson Dep.) at 37:22-25.

Dancers are the main attraction at the Furnace, enticing customers with good looks, dances, and private dances. *See* Ex. 23 (Sartain Dep.) at 50:13-19. Further, The Furnace's website, thefurnacebham.com, boasts that the Furnace has "[t]he sexiest women in the South" and it "features the best dancers in the Southeast. Blonde, brunette, or red head – whatever you have an appetite for – we have them – the Southeast's most talented and beautiful women!!!" *See* Ex. 21 (Scruggs Dep.) at 52:5-53:3; *see also* Ex. 21 (Scruggs Dep.) at 51:14-15.

Plaintiffs' services are therefore an integral part of The Furnace's business.

## VI.   GRAHAM JACKSON IS AN EMPLOYER UNDER THE FLSA

Graham Jackson is an employer under the FLSA, and it is not close.

The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" *Josendis v. Wall to Wall*

*Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir.2011) (quoting 29 U.S.C. § 203(d)).

Based on this broad definition, The 11th Circuit has joined the "overwhelming weight of authority" and held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir.1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). There is no requirement that the individual employee be named a "corporate officer." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1301 (11th Cir. 2013). Whether an individual fits that definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Id.* citing *Alvaraz Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

The *Lamonica* court held that the FLSA should be construed broadly enough to find that liability against corporate employees, even those who are not officers, if they "assume more operational control." 711 F.3d at 1311. The liability has no defined label, office, or title, but is determined by the "circumstances of the whole activity." *Id.* In particular, the FLSA attempts to encompass those who control a corporation's financial affairs and can cause the corporation to compensate (or not compensate) employees under the FLSA. *Id.* Therefore, indirect control must be

"must be both substantial and related to the company's FLSA obligations." *Id*. at 1314.

Defendant Graham Jackson is the primary manager at The Furnace. *See* Ex. 17 (Gregory Jackson Dep.) at 22:8-10. Defendant Graham Jackson has the final say on rules for the club, "except for to my brother [defendant Gregory L. Jackson]." *See* Ex. 18 (Graham Jackson Dep.) at 21:10-15. Gregory L. Jackson consults with his younger brother, Graham G. Jackson, on important business decisions. *See* Ex. 18 (Graham Jackson Dep.) at 21:16-22:2. Manager Christian Bermudez reports to his direct boss, defendant Graham Jackson. *See* Ex. 20 (Deposition of Christian Bermudez) (Bermudez Dep.) at 12:14-13:8; 14:2-7; 18:2-6. Manager Johnny Scruggs also reports to the operations manager, defendant Graham Jackson. *See* Ex. 21 (Deposition of Johnny Scruggs) (Scruggs Dep.) at 16:10-17:12. Mr. Scruggs testified that Mr. Jackson, the operations manager, sets policies and procedures and is his boss. *See* Ex. 21 (Scruggs Dep.) at 17:13-19:9; 30:15-19.

Defendant Graham G. Jackson also set up the house fee system. *See* Ex. 23 (Sartain Dep.) at 14:11-16, 32:12-14. Graham Jackson created the written set of rules known as "The Furnace Rules." Ex. 18 (Graham Jackson Dep.) at 55:15-57-7; Ex. 19 (The Furnace Rules); Ex. 23 (Sartain Dep.) at 35:19-12. Defendant Graham Jackson made suspension decisions. *See* Ex. 24 (Bozeman Dep.) at 24:9-15. Plaintiffs would be charged "late fees" if they were late to work based on

instructions by defendant Graham Jackson. *See* Ex. 24 (Bozeman Dep.) at 41:1-42:3; Ex. 26 (Manasco Text); *See* Ex. 1 (Manasco Decl.) at ¶ 7. Defendants Graham G. Jackson and his brother determined that the club would operate from 4:00 p.m. to 2:00 a.m. on weeknights and until 4:00 a.m. on weekend nights. *See* Ex. 18 (Graham Jackson Dep.) at 22:11-23:7.

Defendant Graham Jackson testified that, as far as he knew, obtaining a business license and language to the effect of "not being an employee" transmogrified dancers into independent contractors. *See* Ex. 18 (Graham Jackson Dep.) at 41:12-16. The club, via Graham Jackson, sets the base price for private dances at twenty dollars ($20) per song. *See* Ex. 21 (Scruggs Dep.) at 28:17-22; 30:11-14; *See* Ex. 1 (Manasco Decl.) at ¶ 9. Defendant Graham Jackson also set the baseline prices for the VIP Room dances. *See* Ex. 21 (Scruggs Dep.) at 30:9-10.

In short, Graham Jackson is the operations manager to whom all other mangers report. He set up the club hours, the house fee system, the base prices for dancers, decided on labelling dancers as independent contractors, created The Furnace Rules, had the final say on rules with his brother, and made final decisions on dancer discipline. Defendant Graham Jackson was intimately involved, and built the system that controlled Plaintiffs, which violated Plaintiffs' FLSA rights. The daily aspects of the job (house fees, no wages, prices, rules) were all under the auspices of Graham Jackson. Graham Jackson is therefore individually, jointly, and

severally liable for The Furnace's FLSA violations. *Alvaraz Perez*, 515 F.3d 1150.

## VII.   DEFENDANTS CANNOT PROVE GOOD FAITH AS A MATTER OF LAW

Plaintiffs are entitled to summary judgment on Defendants' "good faith" affirmative defenses under 29 U.S.C. §§ 259 and 160.

29 U.S.C. § 259 provides, in pertinent part, that [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. 29 U.S.C. § 259(a).

The good-faith defense of section 259 is an ***objective test*** that bars actions for violations of the minimum wage or overtime compensation provisions of the FLSA if the employer pleads and proves that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency. The agency designated to provide interpretations of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor. *See* 29 U.S.C. § 259; *e.g., Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 926 (11th Cir.1987) ("*Cole*"); *Olson v.*

*Superior Pontiac-GMC, Inc.,* 765 F.2d 1570, 1579 (11th Cir.), *modified on other grounds* 776 F.2d 265 (1985).

The Defendants must not only show they acted in objective good faith, but the employer also acted "in actual conformity with and in reliance on" the written agency interpretation. The Eleventh Circuit has noted that

> This is not a requirement of a showing of general good faith; the Portal Act language, 'in good faith in conformity with,' precisely links the question of good faith to an act in conformity, and if there is no conformity, general good faith in other respects cannot save the day.

*Cole,* 824 F.2d at 926 (quoting *Equal Emp. Opp. Comn'n v. Home Ins. Co.,* 672 F.2d 252, 263-65 (2d Cir.1982)).

Here, Defendants claim no reliance on a position articulated by the U.S. Department of Labor. Defendants claim that they exercised good faith compliance with the FLSA by attempting to consult with the City of Birmingham. That entity is involved in municipal law, not providing advise as to compliance with the FLSA. At the very least, Defendants cannot prove that they acted in good faith by consulting with a municipal government regarding the will of Congress. Defendants thus cannot meet their burden under 29 U.S.C. § 259(a).

An employer may also attempt to prove good faith under 29 U.S.C. § 260, which provides "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the

[FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof."

To establish a good-faith defense under § 260, employers must show both objective and subjective good faith. *See Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) ("If the employer fails to prove that he acted with both subjective and objective good faith, liquidated damages are mandatory." Subjective good faith requires "an honest intention to ascertain what the Act requires and to act in accordance with it." *Id.*

Objective good faith entails a duty to "investigate potential liability under the FLSA." *Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) ("Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA."); *see also Gardner v. Country Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556, at *19 (D.S.C. Dec. 3, 2015) ("The owner and operator of a strip club would have to have his head buried in the sand not to know there have been considerable developments in the law regarding the status and compensation of exotic dancers under the FLSA.").

Defendants began operating The Furnace in 1999. Defendants claim that they relied on the advice of now-deceased counsel in classifying Plaintiffs as independent contractors, rather than employees under the FLSA. At bottom, Defendants argue that burying one's head in the sand amount to good faith.

As discussed above, courts in this Circuit and throughout the nation have found exotic dancers to be employees under the FLSA frequently since Defendants opened The Furnace in 1999. Nevertheless, Defendants apparently never made an effort to ascertain the FLSA's dictates. Defendants did not "investigate potential liability under the FLSA" because had they done so in earnest, it is almost certain that Defendants would have encountered one of the myriad of federal courts find dancers to be employees under the FLSA due to policies and practices similar to those at The Furnace. *Smith*, 451 F. Supp. 2d at 1337. To this end, Defendants had no "reasonable grounds for believing its conduct comported with the FLSA." *Id*. Defendants' strategy for comporting with the FLSA was, plainly, not objective good faith. *Id*.

For the same reasons Defendants cannot establish that they acted with objective good faith, Defendants cannot prove they acted with subject good faith. *See Menendez*, 717 F.3d at 1186; *Smith*, 451 F. Supp. 2d at 1337; *Gardner*, 2015 WL 7783556. Indeed, Defendants cannot claim that they made "an honest intention to ascertain what the [FLSA] requires and to act in accordance with it." *Menendez*, 717 F.3d at 1186. Had Defendants ever possessed such an honest intention, they would have known there have been considerable developments in the law regarding the status and compensation of exotic dancers under the FLSA. *Gardner*, 2015 WL 7783556, at *19. Defendants therefore cannot prove good faith under § 260 as a matter of law.

## VIII.  DEFENDANTS CANNOT PROVE THEIR OFFSET AFFIRMATIVE DEFENSE AS A SERVICE CHARGE OR ANY OTHER OFFSET

While Defendants' Affirmative Defenses are not a paragon of clarity, Defendants' Twentieth Affirmative Defense Provides: "The pleader herein is entitled to any and all offsets and/or set offs, credits and/or deductions permissible by law, including, but not limited to, an offsets of performance fees received by plaintiff, and not returns to defendants by plaintiffs." Dkt. 30, pg. 23, ¶ 20.

Plaintiffs anticipate that Defendants will argue that payments Defendants' customers made directly to Plaintiffs are not "tips," but rather, constitute "service charges" which may be used to offset the monetary amount owed to Plaintiffs under the FLSA. This argument is simply incorrect, and necessitates it be struck via partial summary judgment.

"A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.53. On the other hand, "[s]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act" and "[w]here such sums are distributed by the employer to its employees . . . they may be used in their entirety to satisfy the monetary requirements of the [FLSA]." 29 C.F.R. § 531.55(b). Thus, at a minimum, for a fee to constitute a "service charge," it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee. *Henderson v. 1400 Northside Drive, Inc.*, 110 F.Supp.3d 1318, 1322 (N.D. Ga.

2015) (citing *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 930 (S.D.N.Y. 2013)).

The Eleventh Circuit recently revisited the question of what constitutes a "service charge" under the FLSA in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). In *Compere*, employees of an upscale steakhouse brough suit under the FLSA to challenge defendant Nusret Miami's usage of a mandatory 18% service charge on all customer bills to satisfy its FLSA obligations. *Id.* at 1181.The dispositive issue is *Compere* was whether the mandatory service charge constituted a "tip" or a "service charge." *Id.*

In finding that the mandatory 18% service charge was not a tip, and therefore could be applied towards Nusret Miami's FLSA obligations, the Court relied on the definition of "tip" and "service charge" as outlined in the Department of Labor's Regulations at 29 C.F.R. § 531.53 and 29 C.F.R. § 531.55(b). The Court found that the mandatory 18% charge was not "determined solely by the customer" and was not presented by the customers "as a gift or gratuity in recognition of some service performed for the customer." *Id.* at 1186.  Instead, Nusret Miami management determined the amount of the 18% service charge. *Id.* Further, because Nusret Miami made the charge compulsory on each customer's bill, the 18% charge was a service charge, not a tip. *Id.* at 1187. Each customer received an itemized bill with the service charge and agreed to pay it.

None of the factors present in *Compere* exist here. By the language of Defendants' Twentieth Affirmative Defense, it is apparent that Defendants intend to argue that the dance fees paid to Plaintiffs directly from Defendants' customers are "service charges." Again, this argument is facially incorrect.

Furnace customers paid Plaintiffs directly the fees that Defendants claim are service charges. Because The Furnace did not distribute these fees to Plaintiffs directly, these fees are not service charges on this basis alone. *Henderson*, 110 F.Supp.3d at 1322. Moreover, these fees are not additional, compulsory charges on a customer's bill like the service charge in *Compere*. 28 F.4th at 1181. Rather, the fees Defendants assert are "service charges" are akin to the price Nusret Miami's customers paid for their steak. That is to say, Defendants seek to have the price of the service or merchandise itself declared a service charge, not an additional, compulsory charge on each customer's bill. *See id*. Defendants therefore cannot rely on the fees paid to Plaintiffs directly from Furnace customers to offset their minimum wage obligations under the FLSA.

///

///

///

///

///

///

## IX.   CONCLUSION

For all the foregoing reasons, Plaintiffs request this Court grant its motion for partial summary judgment in its entirety, find that Plaintiffs are employees of The Furnace under the FLSA, Graham Jackson is individually liable as an employer under the FLSA, Defendants cannot establish their good faith defense as a matter of law, and the dance fees paid directly by Furnace customers cannot be used to offset Defendants' minimum wage obligations.

Dated: December 6, 2022

*s/ Jason P. Tortorici*
Jason P. Tortorici
**SCHILLECI & TORTORICI, P.C.**
100 Centerview Drive, Suite 205
Birmingham, Alabama 35233
Telephone: (205) 978-4211
*jpt@schillecitortoricilaw.com*

John P. Kristensen (*Pro Hac Vice*)
Frank M. Mihalic, Jr. (*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Los Angeles, California 90211
Telephone: (310) 273-1230
*kristensen@cz.law*
*fmihalic@cz.law*

Jarrett L. Ellzey (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
*jarrett@ellzeylaw.com*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that on Tuesday, December 6, 2022, a true and correct copy of the attached **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT** was served via CM/ECF upon the following parties pursuant to Fed. R. Civ. P. 5:

Gregory S. Ritchey
**RITCHEY LAW FIRM, PLLC**
Founders Trust Center
1740 Oxmoor Road, Suite 100
Birmingham, AL 35209
Phone: 205-271-3105
Fax: 205-271-3111
Email: gsritchey@ritcheylaw.com

*Counsel for Defendants*

Jarrett L Ellzey
Leigh S. Montgomery
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, TX 77006
Phone: 713-322-6387
Fax: 888-276-3455
Email: firm@ellzeylaw.com

*Co-Counsel for Plaintiffs*

Jason P. Tortorici
**SCHILLECI & TORTORICI, P.C.**
100 Centerview Drive, Suite 205
Birmingham, Alabama 35233
Telephone: (205) 978-4211
jpt@schillecitortoricilaw.com

*Co-Counsel for Plaintiffs*

*/s/ Frank M. Mihalic, Jr.*
Frank M. Mihalic, Jr.