UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JORDAN MANASCO, et al. | Case No.: 2:21-cv-00381-JHE |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED; MOTION OPPOSED** |
| v. | |
| BEST IN TOWN, INC. dba THE FURNACE, an Alabama Corporation; GREGORY L. JACKSON, an individual; GRAHAM G. JACKSON, an individual; DOE MANAGERS 1 through 3; and DOES 4 through 10, inclusive, | **COLLECTIVE ACTION** |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| | Trial Date: June 5, 2023 |
| Defendants. | |
| | Amended Complaint Filed: June 29, 2021 |
| _____ / | |

Plaintiffs hereby submit their reply in support of their Motion for Partial Summary Judgment ("the Motion") [Dkt. 95] as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Instead of addressing the staggering authority that exotic dancers around the country in similar situations were employees, defendants Best in Town, Inc. dba

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR                                    PAGE 1
PARTIAL SUMMARY JUDGMENT

The Furnace ("The Furnace" or "the club"), Gregory L. Jackson and Graham G. Jackson (collectively, "Defendants") attempt to manufacture facts in direct contravention of their management's sworn deposition testimony, their written rules, and communications. There is no serious factual dispute as to whether Defendants had any significant control over the degree and nature of the work Plaintiffs performed as exotic dancers, subject to Defendants' rules, policies, and procedures. Furthermore, the issue of misclassification is a question of law for this Court, and this Court alone to determine. Defendants' opposition fails to present any substantive argument as to the individual liability of Graham G. Jackson.

Defendants' argument that it acted in good faith likewise fails. Defendants argue that a consultation with a municipality more than twenty years ago trumps and overrides federal labor law violations would be a gamechanger if true. This novel theory underpins Defendants' argument to both misclassification and its good faith defense.

The good faith defense is a high burden, and requires an objective effort to comply not with local laws, but the FLSA. Defendants argue that they consulted with an attorney more than twenty years ago, but fail to identify what advice was provided besides compliance with local laws. Just going to an attorney and getting defective advice does not meet the objective standards required for the good faith defense.

Just like the other fifty District Courts facing even less egregious scenarios,

summary judgment on misclassification is appropriate. Graham Jackson was an employer as a matter of law, and Defendants have failed to present prima facie evidence of their good faith affirmative defense. This Court should therefore determine that the present facts and authorities weigh heavily in favor of Plaintiffs and grant Plaintiffs' Motion in its entirety.

## II. DEFENDANTS' MISCLASSIFIED PLAINTIFFS AS INDEPENDENT CONTRACTORS

In their Opposition, Defendants first point out that the City of Birmingham requires dancers to possess a license before performing as a dancer. But attorneys must possess a license before engaging in the practice of law. Accountants must also possess a license to perform as Certified Public Accountants. Yet, it is beyond dispute that attorneys and accountants are employees under the FLSA. Moreover, whether the City of Birmingham required exotic dancers to obtain permits is irrelevant to the economic realities test. Defendants' reliance on the City of Birmingham's local ordinance is thus misplaced and a red herring.

Defendants' argument also ignores Plaintiffs' specific and detailed factual allegations, and the decades-long development in case law which supports the proposition that exotic dancers are employees.

Plaintiffs have provided the Court with the following: **(1)** The Furnace's Club Rules that apply to all dancers; **(2)** The Furnace requires all dancers to work at least four days per week **(3)** The Furnace's house mom takes the dancers' car keys before

each shift pursuant to the Furnace's policies; **(4)** Dancers could and would be suspended for failure to follow The Furnace's rules; **(5)** Dancers' primary role at The Furnace is to dance to provide entertainment to The Furnace's customers; **(6)** Defendants paid for rent, advertising, insurance, and utility bills for The Furnace; **(7)** The Furnace's house mom set a weekly schedule for Plaintiffs; **(8)** The Furnace penalized Plaintiffs if they missed a shift by charging a "late fee."; **(9)** The Furnace's DJ informs dancers when they are up next to dance, and dancers must dance for two songs, and be topless by the end of the second song.

Defendants argue that Plaintiffs were not employees under the FLSA because they were free to pursue careers outside of their employment with The Furnace. Courts throughout the country have rejected this argument and find exotic dancers to be employees under the FLSA. *Hurst v. Youngelson*, 354 F.Supp.3d 1362, 1376 (N.D. Ga. 2019) ("Working at other clubs does not diminish Plaintiff's relationship with Follies. Many people are employed at two jobs."); *McFeeley v. Jackson Street Ent., LLC*, 47 F.Supp.3d 260, 272 (D. Md. 2014) ("The fact that dancers can work at other clubs [does] not distinguish them from countless workers . . . who are undeniably employees under the FLSA, for example, waiters, ushers, and bartenders – that may simply work for other businesses."). The Fourth Circuit upheld *McFeeley*, 47 F.Supp.3d 260 in *McFeeley v. Jackson Street Ent., LLC*, 825 F.3d 235 (4th Cir. 2016).

Defendants' proffered evidence is inconsistent with the testimony of its own management, including Graham G. Jackson himself. Jenny Sartain acknowledged that The Furnace requires Plaintiffs to set a work schedule. *See* Exhibit 1, Deposition of Jennifer Sartain (Sartain Depo.) at 38:17-18. Donna Bozeman, The Furnace's long-time house mom, revealed that she set the weekly schedule for Plaintiffs. *See* Exhibit 2, Deposition of Donna Bozeman (Bozeman Depo.) at 21:12 to 22:24. The Furnace's own employees also acknowledged that Defendants charged Plaintiffs late fees. Exhibit 2, Bozeman Depo. at 41:1-42:3.

Jenny Sartain did not dispute that The Furnace charged house fees to Plaintiffs. Ex. 1, Sartain Depo. at 50:20-23. Moreover, Graham G. Jackson admitted that he created "The Furnace Rules," a list of "dos and donts." *See* Exhibit 3, Deposition of Graham G. Jackson (Jackson Depo.) at 56:11-23. Donna Bozeman revealed that Graham G. Jackson suspended dancers from The Furnace for failing to comply with The Furnace Rules. Ex. 2, Bozeman Depo. at 24:6-8. Graham G. Jackson and Donna Bozeman also admitted The Furnace required Plaintiffs to work at least four days per week. Ex. 2, Bozeman Depo. at 31:8-11; Ex. 3, Jackson Depo. at 59:17 to 60:4. Donna Bozeman revealed that The Furnace requires Plaintiffs to charge a minimum of $20 per dance. Ex. 2, Bozeman Depo. at 29:5-9. The Furnace controlled the hours of operation during which Plaintiffs could perform for customers. Ex. 3, Jackson Depo. at 22:11-21.

Courts throughout the nation have found that these factors indicate control. *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993) (instructing dancers to charge minimum prices indicated control); *McFeeley v. Jackson Street Ent., LLC*, 47 F.Supp.3d 260, 269 (D. Md. 2014) (setting the hours of operation for the club indicated control); *Thompson v. Linda And A, Inc.*, 779 F.Supp.2d 139, 148 (D.D.C. 2011) (having dancers pay a house fee to dance demonstrated control); *Reich v. Priba Corp.*, 890 F.Supp. 586, 592 (N.D. Tex. 1995) (dictating the atmosphere of the club demonstrated control).

The evidence that Defendants offer to create a factual dispute does not create a "*genuine* factual dispute." *Anderson v. Lib. Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Defendants also claim that Plaintiffs were not subjected to a schedule, and therefore Defendants did not control Plaintiffs. This is incorrect and flies in the face of the testimony of The Furnace's long-time house mom. Exhibit 2, Bozeman Depo. at 21:12 to 22:24. But even if it were true, no reasonably jury could find in Defendants' favor. *See Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921, at *4 (N.D. Ga. Dec. 31, 2013); *see also Hanson v. Trop, Inc.*, 167 F.Supp.3d 1324, 1330 (N.D. Ga. 2016) ("[p]laintiff's control over her scheduling represents only minimal control over the employment relationship when compared to all of the elements of the job that [the club] controlled…"); *Reich v. Priba Corp.*, 890 F.Supp. 586, 591-92 (N.D. Tex. 1995) (entertainers deemed

employees despite the fact that they "are free to set their own schedules and can perform at the club at any time."); *see also Butler v. PP and G, Inc.*, 2013 WL 5964476 (D. Md Nov. 7, 2013 (granting partial summary judgment to plaintiff where there is no set schedule.); *Harrell v. Diamon A. Entm't, Inc.* 992 F.Supp.1343, 1348 (M.D. Fla. 1997). Defendants fail to establish a genuine factual dispute regarding the degree of control they exercised over Plaintiffs. *Anderson*, 477 U.S. at 247-48.

Defendants also contend that Plaintiffs enjoy an opportunity for profit or loss depending on their managerial skill by claiming that Plaintiffs can sometimes change above The Furnace's mandatory minimum price for a dance.

Plaintiffs could not hire other dancers to work for them, had no managerial responsibility, and therefore could not profit from their management of others. Defendants note that Plaintiffs sometimes earned money by enticing customers to patronize The Furnace. Courts routinely reject this argument. *Hanson v. Trop, Inc.* 167 F.Supp.3d 1324, 1331 (N.D. Ga. 2016) ("The argument that dancers can 'hustle' to increase their profits has been almost universally rejected.") (collecting cases). Moreover, The Furnace set the minimum dance prices. This "controlled Plaintiffs' ability to earn a profit." *McFeeley*, 47 F.Supp.3d at 270. Defendants therefore fail to establish a genuine factual dispute regarding Plaintiffs' opportunity for profit or loss depending upon their managerial skill. *Anderson*, 477 U.S. at 247-48.

Defendants also contend that Plaintiffs have invested substantial sums of money into their employment with The Furnace. Specifically, Defendants

underscore that Plaintiff Manasco spent over $4,300 on cosmetic procedures, and some Plaintiffs purchased at-home poles to practice their job duties. Defendants also claim that Plaintiffs' collective house fees of approximately $21,000 amounts to an "investment" towards The Furnace's rent of $36,000. These house fees highlight the degree of control that The Furnace exercises over Plaintiffs. Moreover, these house fees are mandatory. Because The Furnace subsidizes its business expenses by exercising control over its employees does not transmorgify "control" into "investment." The Furnace pays its rent, pays for its stages, poles, PA systems, and for all its advertising. One Plaintiff had a cosmetic surgery that tangentially benefitted her employment with The Furnace and a few Plaintiffs purchased at-home poles to fortify their job duties away from The Furnace. Further, Defendants bemoan that they did not receive tax records for each Plaintiff. But Plaintiffs' produced all evidence and documentation within their custody, possession, or control. FED. R. CIV. PRO. 34(a)(1). Indeed, Plaintiffs produced the tax returns that exist. Moreover, Defendants were free throughout the discovery process to compel tax returns from Plaintiffs if Defendants believed they existed. Defendants declined to do so, and cannot use it as a sword and a shield to defeat a motion for summary judgment.

The evidence before this Court demonstrates that any investment Plaintiffs made in their employment with The Furnace was miniscule compared with Defendants' investments. Defendants thus fail to establish a genuine factual dispute regarding Plaintiffs' investment in The Furnace. *Anderson*, 477 U.S. at 247-48.

Defendants do not dispute that performing as an exotic dancer at The Furnace generally favors the Plaintiffs.

Defendants also contend that the degree of permanency of the working relationship leans in their favor. Defendants claim that Plaintiffs could work at The Furnace to save for a down payment on a house, a vacation, or even work other jobs. Defendants' logic would render all workers independent contractors. An employee's purpose for showing up to work and complying with its employer's rules and policies is irrelevant to FLSA status. The Furnace forced Plaintiffs to follow its rules, set Plaintiffs to a schedule, and penalized Plaintiffs for not following the schedule and/or The Furnace's rules. Moreover, whether Plaintiffs could enjoy other employment while working for The Furnace has no bearing on how long Plaintiffs could work for The Furnace as exotic dancers. The Furnace placed no temporal limitation on Plaintiff's employment as an exotic dancer, and most Plaintiffs worked at The Furnace for a year or more. *Hurst*, 354 F.Supp.3d at 1366 ("Relationship with the club that extend over one year can signify permanence.") Plaintiffs' employment with The Furnace was permanent and Defendant cannot maintain their burden.

Defendants also concede that Plaintiffs formed an integral part of The Furnace's business.

Defendants have failed to meet their burden to show there are triable issues of fact as to whether The Furnace misclassified Plaintiffs as independent contractors.

Relevant factors, in their totality, weigh in favor of finding that Plaintiffs were Defendants' employees and were misclassified as independent contractors.

### III.   GRAHAM G. JACKSON IS INDIVIDUALLY LIABLE

Defendants make no argument as to the individual liability of Graham G. Jackson; instead, Defendants rely on their arguments as to the misclassification issue. Plaintiffs have provided sufficient undisputed evidence that Graham G. Jackson had a significant ownership interest in and exercised significant operational control over The Furnace and Plaintiffs' work at the club. Graham G. Jackson created "The Furnace Rules." Exhibit 1, Sartain Depo. at 35:19-12. Graham G. Jackson made decisions regarding dancer suspensions. Exhibit 2, Bozeman Depo. at 24:9-15. Graham G. Jackson instituted the policy to charge Plaintiffs and other dancers "late fees" for arriving late to work. Exhibit 2, Bozeman Depo. at 41:1-42:3. Defendants have therefore failed to create a genuine issue of material fact as to whether Graham G. Jackson is an employer under the FLSA. Accordingly, this Court should find Graham G. Jackson is individually liable for The Furnace's FLSA violations.

### IV.   DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN ON THEIR GOOD FAITH DEFENSE

To satisfy the FLSA's good faith requirement, the employer must show it acted with objective and subjective good faith. *Rodriguez v. Farm Stores Grocery*, Inc., 518 F.3d 1259, 1272 (11th Cir. 2008). Objective good faith is a reasonable, but

mistaken, belief that the employer acted in compliance with the FLSA. *Id*. To "establish its good faith, an employer must prove both that it acted with a good faith belief that its procedures did not violation the law and that it had reasonable grounds for believing this." *Ojeda-Sanchez v. Bland Farms, LLC*, 499 Fed. Appx. 897, 903 (11th Cir. 2012). Further, the issue of good faith is a question of law for the court, not the jury. 29 U.S.C. § 260; *Chao v. Tyson Foods, Inc*., 2008 WL 11376599 at *1 (N.D. Ala. 2008). On the other hand, the Eleventh Circuit posits that whether a defendant's FLSA violation is "willful" is a question for the jury. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 n.3 (11th Cir. 2008).

Defendants first claim that they "posted the Fair Labor Standards laws." Defendants offer no detail regarding the contents of these labor laws or where they posted them. Notably, Defendants did not post the mountain of authority finding that dancers are employees under the FLSA. Defendants cannot claim that these labor laws stated that exotic dancers were independent contractors under the FLSA.

Further, Defendants again claim to have acted in good faith because they relied on the City of Birmingham's local ordinances. But compliance with municipal ordinances is, by definition, subordinate to federal law. Birmingham's requirement that dancers obtain licenses before performing as exotic dancers is irrelevant to the economic reality of an individual dancer's relationship with her employer.

Defendants also claim to have consulted with an attorney when the Jackson brothers opened The Furnace – in the late 1990s, but did not produce what that

advice was, which they must do to meet their burden. *See Townley v. Floyd & Beasley Transfer Co.*, 1989 WL 205342 at *4 (N.D. Ala. 1989) ("[T]o reap the benefit of the good faith defense . . . based on the advice of counsel the defendant must honestly and truly seek the advice of counsel, counsel must give advice that is reasonable in a legal sense, and the defendant must strictly conform with that advice."). **The Furnace has taken no steps** in two-and-a-half decades to ascertain and comply with the dictates. Indeed, Defendants concede that The Furnace last contacted an attorney in the late 1990s regarding FLSA compliance. It is not objectively reasonable to open a business, obtain the advice of counsel regarding compliance with municipal laws only, and then remain idle for two-and-a-half decades. Defendants have remained willfully ignorant as federal courts have held in near unanimity that dancers are employees under the FLSA. No reasonable jury could find objective good faith in Defendants' inaction for two-and-a-half decades.

Defendants cite *Kimbrel v. DEA Corp.*, 2016 WL 7799340 at *13 to demonstrate that they attempted to complied in good faith with the FLSA. This is an unpublished out-of-circuit opinion. The central issue in *Kimbrel* was whether the defendant willfully violated the FLSA – not whether the defendant acted in good faith to comply with the FLSA. Defendants' willfulness is question for the jury. *See Alvarez Perez*, 515 F.3d at 1163 n.3. Defendants' affirmative defense of good faith is question of law for this Court to decide. 29 U.S.C. § 260; *Chao*, 2008 WL 11376599 at *1. The Court's analysis in *Kimbrell* is thus inapposite.

Moreover, unlike the strip club in *Kimbrell* which had consulted with an attorney within the past two decades, The Furnace has not consulted with an attorney is two-and-a-half decades, and there is no evidence of what that advice was.

Defendants also cite an unreported three-page opinion in *Stevenson v. Great Am. Dream*, 2015 WL 2353094. There, the plaintiffs did not submit any evidence or contest the defendants' lack of good faith, and this factored heavily into the Court's disposition. *Id*. at *3.

One conversation with an attorney two-and-half-decades ago — that resulted in defective legal advice — and never taking another step to ascertain the FLSA's dictates and trying to comply with them, is not an objectively reasonable good faith attempt to comply with the FLSA. Defendants did not try to comply with the FLSA in an objectively reasonable fashion and have thus failed to meet their burden. This Court should therefore grant summary judgment in Plaintiffs' favor as to Defendants' good faith affirmative defense. Plaintiffs are therefore entitled to summary judgment on Defendants' good faith defense.

## V. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' OFFSET AFFIRMATIVE DEFENSE

The problems with Defendants' Offset argument appear right on its face. Defendants claim that a VIP Room fee, i.e., the fee one pays to a dancer in exchange for dances in the VIP, is a service charge. Defendants describe the price of the

services that Plaintiffs perform — not a service charge. Plaintiffs cited cases attack Defendants' offset defense from different sides.

For a fee to be a "service charge," it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee. *Henderson v. 1400 Northside Drive, Inc.*, 110 F.Supp.3d 1318, 1322 (N.D. Ga. 2015) (citing *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 930 (S.D.N.Y. 2013)).

Defendants claim only that its VIP Room fees "are on its Income Statement." This is not the inquiry. Defendants offer no argument that distribute these VIP Room fees directly to Plaintiffs. Under the *Hart* analysis of what constitutes a "service charge," the appearance of VIP Room fees on an Income Statement does not create a genuine issue of material fact because Defendants make no argument that they distributed these fees directly to Plaintiffs—because Defendants did not distribute these VIP Room fees directly to Plaintiffs.

Summary Judgment is also appropriate after the Eleventh Circuit's decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). In that case, the mandatory 18% service charge was not a tip because the Court relied on the definition of "tip" and "service charge" as outlined in the Department of Labor's Regulations at 29 C.F.R. § 531.53 and 29 C.F.R. § 531.55(b). The Court found that the mandatory 18% charge was not "determined solely by the customer" and was not presented by the customers "as a gift or gratuity in recognition of some service performed for the customer." *Id*. at 1186.  Instead, Nusret Miami management

determined the amount of the 18% service charge. *Id*. Further, because Nusret Miami made the charge compulsory on each customer's bill, the 18% charge was a service charge, not a tip. *Id*. at 1187.

Here, Defendants claim that there is a genuine issue of material fact solely because its VIP Room fees appear on its income statement. The Furnace does not charge its customers an additional, obligatory percentage of its bill with which The Furnace may satisfy its minimum wage obligations. The Furnace does not pay Plaintiffs directly with fees included in its gross receipts. Indeed, Plaintiffs receive compensation from their employment with The Furnace exclusively through Defendants' customers. No authority to support Defendants' apparent position that it may subsidize its minimum wage obligations through its customers. Defendants therefore fail to establish a genuine factual dispute regarding their offset affirmative defense. *Anderson*, 477 U.S. at 247-48.

## VI. CONCLUSION

For the foregoing reasons and as explained in their Motion, Plaintiffs respectfully requests that this Court grant this Motion in its entirety.

Dated: February 22, 2022          */s/ John P. Kristensen*

John P. Kristensen *(Pro Hac Vice)*
Frank M. Mihalic, Jr. *(Pro Hac Vice)*
Jason P. Tortorici
Jarrett L. Ellzey *(Pro Hac Vice)*
Leigh S. Montgomery *(Pro Hac Vice)*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on Wednesday, February 22, 2023, a true and correct copy of the attached **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGEMENT** was served via CM/ECF upon the following parties pursuant to Fed. R. Civ. P. 5:

| | |
|---|---|
| Gregory S. Ritchey<br>**RITCHEY LAW FIRM, PLLC**<br>Founders Trust Center<br>1740 Oxmoor Road, Suite 100<br>Birmingham, AL 35209<br>Phone: 205-271-3105<br>Fax: 205-271-3111<br>Email: gsritchey@ritcheylaw.com<br><br>*Counsel for Defendants* | Jason P. Tortorici<br>**SCHILLECI & TORTORICI, P.C.**<br>100 Centerview Drive, Suite 205<br>Birmingham, Alabama 35233<br>Telephone: (205) 978-4211<br>jpt@schillecitortoricilaw.com<br><br>*Co-Counsel for Plaintiffs* |

Jarrett L Ellzey
Leigh S. Montgomery
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, TX 77006
Phone: 713-322-6387
Fax: 888-276-3455
Email: firm@ellzeylaw.com

*Co-Counsel for Plaintiffs*

 

                                                   */s/ John P. Kristensen*
                                                        John P. Kristensen