FILED
2024 Feb-06  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JORDAN MANASCO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:21-cv-00381-JHE |
| | ) | |
| | ) | *SEALED* |
| BEST IN TOWN, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION[1]**

Plaintiffs Jordan Manasco ("Manasco"), Katrina Perez ("Perez"), Peyton Mastropolo ("Mastropolo"), Stephanie Jeronymo ("Jeronymo"), Giddel Endaya Lynn ("Lynn"), Brittany Swan ("Swan"), Kelsey Lucas ("Lucas"), Laurel Hamrick ("Hamrick"), Julianna Edgerton ("J. Edgerton"), Jasmine Dove ("Dove"), Brianna Pettit ("Pettit"), Caitlin Glass ("Glass"), Constance Edgerton ("C. Edgerton"), Laura Slovensky ("Slovensky"), Jessica Campbell ("Campbell"), Miranda Fulcher ("Fulcher"), Nikkita Gordon ("Gordon"), Kimberly Chapman ("Chapman"),[2] and Kelly McDonald ("McDonald")[3] (collectively, "Plaintiffs"), along with Defendants Best In Town, Inc. ("Best In Town"), Gregory L. Jackson and Graham G. Jackson (collectively,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Docs. 32, 56 & 131).

[2] Pursuant to Defendants' unopposed motion to compel arbitration (doc. 83), Chapman's claims were previously dismissed without prejudice. (Doc. 86). The parties have jointly stipulated to reinstate Chapman's claims. (Doc. 127-2).

[3] Although McDonald had not previously been a plaintiff in this action, the parties have jointly stipulated that she "shall be considered an opt-in Plaintiff in this matter for the purposes of settlement and resolution of any claims [she] has against Defendants." (Doc. 127-2 at 2).

"Defendants") have jointly moved for approval of their proposed settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"). (Doc. 127). The parties have also jointly moved to maintain the settlement agreement under seal. (Doc. 123). For the reasons set forth below, the motions for settlement approval (doc. 127) and to seal (doc. 123) are **GRANTED**.

## I. Background Facts

Plaintiffs are exotic dancers. Defendant Best In Town operates a club known as The Furnace. Defendant Gregory Jackson is the sole owner and operator of Best In Town. Defendant Graham Jackson is the primary manager of The Furnace. Through their amended complaint, Plaintiffs collectively allege that Defendants misclassified them as independent contractors and thus failed to pay minimum wages, required them to pay illegal kickbacks, unlawfully took their tips, and forced them to tip other employees. (Doc. 27 at 1–19). Manasco also raises individual claims for FLSA retaliation, interference with her rights under the Family and Medical Leave Act ("FMLA"), and FMLA retaliation. (*Id.* at 20–23).

The parties engaged in extensive discovery, including numerous depositions. After discovery, Plaintiffs moved for partial summary judgment. (Doc. 95). On September 13, 2023, the undersigned entered a memorandum opinion and order granting that motion. (Doc. 110). Specifically, the undersigned held: (1) Plaintiffs were misclassified as independent contractors and were in fact employees under the FLSA; (2) Graham Jackson is Plaintiffs' employer under the FLSA; (3) Defendants may not assert a good faith affirmative defense under 29 U.S.C. §§ 259 or 260; and (4) Defendants may not assert an offset affirmative defense. (*Id.* at 36). Following a status conference, the undersigned referred the matter to former Magistrate Judge John E. Ott for mediation. (Doc. 115). The mediation was successful, and the parties arrived at the settlement they have now asked the court to approve.

Under the terms of the agreement, Plaintiffs receive a gross sum of $1,250,000. (Doc. 127 at 10). This amount is allocated as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Manasco | $149,177.56 |
| Mastropolo | $92,592.59 |
| Perez | $92,592.59 |
| Lynn | $64,814.81 |
| Swan | $37,037.04 |
| Lucas | $22,222.22 |
| Jeronymo | $148,624.85 |
| Hamrick | $129,610.79 |
| J. Edgerton | $44,444.44 |
| Dove | $9,259.26 |
| Pettit | $4,138.39 |
| Glass | $55,555.55 |
| C. Edgerton | $29,629.63 |
| Chapman | $37,037.04 |
| Slovensky | $37,037.04 |
| Campbell | $92,592.59 |
| Fulcher | $83,333.33 |
| Gordon | $9,259.26 |
| McDonald | $111,041.02 |

(Doc. 127 at 11–12). These amounts represent an approximation of the time Plaintiffs worked but were not paid minimum wage. The parties dispute the accuracy of Defendants' records as to the shifts Plaintiffs worked, so the value of each Plaintiff's recovery is based on Plaintiffs' counsel's assumption that Plaintiffs worked four seven-hour shifts per week pursuant to The Furnace's rules, paid $50 per shift in house fees, and paid $35 per shift in forced tips. (Doc. 127 at 12–13). Plaintiffs working at The Furnace within the last two years had more valuable claims because Plaintiffs have the burden to prove willfulness in order to take advantage of the FLSA's three-year statute of limitations. (*Id.* at 13). The parties indicate that this is close to the maximum value of Plaintiffs' claims. (*Id.*).

Plaintiffs' counsel calculate the lodestar for their attorney fees at $572,531.28.  (*Id.*).  Their retainer agreement with Plaintiffs entitles them to 45% of the settlement, which is $562,500.00. (*Id.*).  However, Plaintiffs' counsel seek only $552,990.75 in fees.  (*Id.* at 29).  Plaintiffs' counsel have also calculated costs at $19,729.44, which they have allocated evenly among Plaintiffs.  (*Id.* at 13, 17–18).

## II. Analysis

### A. There Is a Bona Fide Dispute and Plaintiffs' Recoveries are Fair and Reasonable

If an employee proves his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.' " *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011). Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.

In *Lynn's Food Stores, Inc. v. United Stat*es, 679 F.2d 1350, 1355 (11th Cir. 1982), the Eleventh Circuit stated there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA

provisions. The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other damages due under the statute. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

Having reviewed the parties' motion for settlement approval (doc. 127) and the attached settlement agreements (docs. 127-4 through 127-7), the undersigned finds the parties' dispute as to the merits of the case is legitimate. The undersigned notes that the settlement was procured by experienced counsel through mediation with a former magistrate judge of this court. There is little reason to believe that the settlement was procured through collusion under these circumstances. The undersigned also credits that trial would have introduced additional uncertainties and increased costs and fees that could have eaten into any additional recovery Plaintiffs might have obtained. Therefore, considering the entirety of the parties' submission, the undersigned finds the settlement is fair and reasonable.

### B. Reasonableness of Attorney Fees

"Where the attorney's fee was agreed upon separately, without regard to the amount paid to the plaintiff, then 'unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" *Davis v. The Filta Group, Inc.*, 2010 WL 3958701, *2 (M.D. Fla. Sept. 20, 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, *5 (M.D. Fla. Aug. 4, 2009)). The fees in this case were not negotiated separately; they are a percentage of Plaintiffs' recovery. Thus, the undersigned must weigh the reasonableness of the fee.

To award a fee under the FLSA, the court must first determine the "lodestar," which is the product of the plaintiffs' attorneys' reasonable hours multiplied by a reasonable hourly rate. *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 1277, 1292 (N.D. Ala. 2014).

> In the Eleventh Circuit, *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292 (11th Cir.1988), and *Hensley v. Eckerhart*, 461 U.S. 424 . . . (1983), provide the framework for awarding attorneys fees to prevailing plaintiffs. To begin its analysis, the Court must first determine the "lodestar," which is calculated by multiplying the number of hours reasonably expended in a litigation by a reasonable hourly rate. *See e.g. Hensley*, 461 U.S. at 433[]; *Norman*, 836 F.2d at 1299. While the "lodestar" method effectively replaced the balancing test previously prescribed by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19, the twelve (12) *Johnson* factors "might still be considered in terms of their influence on the lodestar amount." *Norman*, 836 F.2d at 1299.
>
> * * *
>
> The determination of reasonableness lies in the sound discretion of the trial court, *Norman*, 836 F.2d at 1301. In determining whether the number of hours expended on the litigation was reasonable, the district court should exclude from its initial fee calculation "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 . . . . Also, in making this calculation, the court should exclude "time spent on discrete and unsuccessful claims." *Norman*, 836 F.2d at 1302. . . . "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" [*ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir.1999) ].
>
> When determining a reasonable hourly rate, the rate should be "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* On the issue of a reasonable rate, the Court is itself considered an expert and can make an informed judgment as to a proper award of fees even without the benefit of outside testimony. *Id.* at 1303; *see also Loranger* [*v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994)].

*James v. Wash Depot Holdings, Inc.*, 489 F. Supp.2d 1341, 1346–47 (S.D. Fla.2007).

Once the lodestar is calculated, there may be other factors that suggest enhancing or reducing the lodestar fee. *Briggins*, 3 F. Supp. at 1292. The result obtained for the plaintiff is an important factor. *Id.*

The most important factor to consider is the result obtained. [*Hensley* at 436–37]. If the success was limited or the plaintiff's victory was limited, the lodestar must be reduced to reflect the limited result. *Norman*, 836 F.2d at 1302; *See also Popham v. City of Kennesaw*, 820 F.2d 1570, 1579–80 (11th Cir.1987). Fee awards, however, should not simply be proportionate to the results obtained by the Plaintiff. *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir.1997) (citing *Riverside v. Rivera*, 477 U.S. 561 . . . (1986)). As this Court has noted before, "'[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case.' " Tyler v. Westway Auto. Serv. Ctr., Inc., 133 Fed. Appx. 604, 2005 WL 1208573, *9 (S.D. Fla.2005) (quoting *Holyfield v. F.P. Quinn & Co*., 1991 WL 65928, *1 (N.D. Ill. April 21, 1991) (court awarded approximately $7,000 in fees even though the judgment was only $921)); *see also Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir.1991) (quoting *Rivera*, 477 U.S. at 574 . . .) ("'Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'").

*Wash Depot Holdings, Inc*., 489 F. Supp.2d at 1347.

The undersigned has considered the Declaration of John P. Kristensen, the attached billing records, and the parties' submission of approvals in similar cases and finds that the fees detailed in them are reasonable. (Docs. 127-1, 127-8 through 129-12). Specifically, the undersigned finds to be reasonable hourly rates of $775 for Attorney Kristensen, $400 for Attorney Jesenia A. Martinez, $325 for Attorney Frank M. Mihalic, Jr, $275 for Attorney Gabriel Minsal, $250 for Attorney Alejandro Marin, $725 for Attorney Jarrett L. Ellzey, $450 for Attorney Leigh S. Montgomery, $550 for Attorney Jason P. Tortorici, and $125 for Paralegal Alice Newlin. (*See* doc. 127-1 at ¶¶ 1–27). The undersigned has examined the billing records and finds that they represent reasonable expenditures of time. Therefore, the undersigned agrees that a lodestar of $572,531.28 is appropriate. Since the requested fee of $562,500.00 is less than the lodestar, the undersigned concludes it is reasonable.

### C. Impermissible Terms

Although the settlement and attorney fee amounts are reasonable, the parties have included two impermissible terms in their agreements. First, the agreements contain a pervasive release of a wide variety of employment and tort claims. A representative paragraph in Chapman's agreement states:

> Entertainer releases all claims asserted or that could have been asserted in the FLSA Case, including, but not limited to claims under the Fair Labor Standards Act and the Alabama labor laws, arising from or relating to her relationship with and any services she may have provided to or for the benefit of COMPANY or any of the Released Parties, that she may have as of the date hereof. This release includes, but is not limited to, all such claims, demands, actions, causes of action, rights, offsets, liens, or liabilities, whether know [sic] or unknown, alleged or not alleged in the FLSA Case, suspected or unsuspected, contingent or vested, which Entertainer now has or may have in the future which were or could have been raised or asserted in a Complaint or demand for arbitration. To the full extent permitted by law, Entertainer, for herself, and her marital community, if any, partners, heirs, executors, administrators, successors, trustees and assigns, waives, releases and forever discharges, and agrees that she will not in any manner institute, prosecute or pursue, any complaint, claim, lawsuit, clam for relief, demand, suit, action or cause of action, whether at in law or in equity, which she could assert at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, any claim under the Fair Labor Standards Act; the Alabama labor laws; any claims for unpaid wages, and any statute or wage order (federal or state) relating to her employment, and claims against COMPANY and/or the Released Parties with respect to any event, matter, claim, under the Fair Labor Standards Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 1981, the Age Discrimination in Employment Act, the Alabama Age Discrimination in Employment Act, the Consolidated Omnibus Reconciliation Act ("COBRA") the Employee Retirement Income Security Act ("ERISA"), § 25–5–11.1 of the Alabama Code, and the Alabama labor laws as well as any state law causes of action for fraud, breach of contract, negligence, wantonness, outrage, and invasion of privacy arising out of Entertainer's relationship with COMPANY and/or the Released Parties and/or the termination of that relationship. If any of the released claims are not approved by the Court, they are severable from this agreement and excised.

(Doc. 127-7 at 3–4, ¶ 7).  This is problematic because an employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010).  With the exceptions of Plaintiffs Manasco, J. Edgerton, and McDonald, any claims other than FLSA and Alabama wage and hour claims are speculative and not at issue in this case. Therefore, Defendants may not secure the release of those claims in an FLSA settlement.  As for Plaintiffs Manasco, J. Edgerton, McDonald, the complaint confirms (in Manasco's case) and the parties represent (in McDonald's and J. Edgerton cases (*see* doc. 132)) that these plaintiffs also allege FMLA claims against Defendants.  Those plaintiffs are entitled to release those non-speculative claims through the settlement of this action.

A second impermissible provision involves a one-way right to enforce the agreements' confidentiality provisions.  Specifically, the agreement provides that Defendants "will have the right and standing to bring an action including, but not limited to, an action to enjoin Entertainer or any person and/or organization violating the confidentiality provisions in this Agreement (Paragraphs 12, 18, and 19) or an action to enjoying Entertainer or any person and/or organization who has announced an intention to violate the confidentiality provisions in this Agreement (Paragraphs 12 and 18)."  (Doc. 127-7 at 8, ¶ 20).  The agreements further provide that Defendants—and only Defendants—are entitled to liquidated damages of $5,000.00 per violation. (*Id.*).  The undersigned finds this provision is at odds with the purpose of the FLSA.  *Gomez v. Mena Food Grp., LLC*, No. 20–60068-CIV, 2020 WL 13369793, at *1 (S.D. Fla. May 21, 2020) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015)).

The undersigned held a telephone conference with the parties on January 30, 2024.  During the conference, the parties confirmed that they had no objection to striking the offending provisions

as follows.  The parties subsequently filed a joint stipulation memorializing those representations.

(Doc. 132).  Accordingly, the settlement agreements are modified as follows:

- The liquidated damages clause (beginning with "It is further agreed that for each such violation" and continuing through the end of the paragraph),[4] is **STRICKEN**.

- Paragraph 7 of each agreement except those of Plaintiffs Manasco, J. Edgerton, and McDonald is **STRICKEN** as to all claims except claims those under the FLSA and claims under the State of Alabama's wage and hour laws.  Paragraph 7 of Plaintiffs Manasco's, J. Edgerton's, and McDonald's agreements (doc. 127-4 at 6–7; doc. 127-5 at 27–28; doc. 127-7 at 69–70) is **STRICKEN** as to all claims except claims under the FLSA, claims under the FMLA, and claims under the State of Alabama's wage and hour laws.

### D. Confidentiality

The parties also wish to maintain the settlement agreements under seal for eighteen months.

(Doc. 123).  "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (citation omitted).  To that end, the norm is that the public has access to judicial records and is entitled to "inspect and copy" them. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).  However, the right of access is not absolute:

> The common law right of access may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's

---

[4] In most of the agreements, the paragraph containing the liquidated damages clause is Paragraph 20.  (*See, e.g.,* doc. 127-4 at 11, ¶ 20).  In others, it is Paragraph 21.  (*See, e.g.,* doc. 127-5 at 32, ¶ 21).

interest in keeping the information confidential." *Chicago Tribune,* 263 F.3d at 1309. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* at 1315. In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. *See In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir.1987); *Shingara v. Skiles,* 420 F.3d 301, 305–06 (3d Cir.2005); *Amodeo,* 71 F.3d at 1050–51. A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information. *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L. Rev. 427, 464–74 (1991).

*Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Here, the undersigned finds the parties have shown good cause for the settlement agreements to be sealed. First, the parties represent that Defendants have changed their employment conditions and procedures and that "the settlement terms of this case are uniquely related to the employment conditions and procedures previously in use." (Doc. 123 at 5). Second, the settlement agreements and their terms have been provided to all parties and collective members in this case. (*Id.* at 6). The undersigned notes that the collective membership was determined after conditional certification and motion practice related to that certification, so the undersigned is confident that all parties with a cognizable interest in the settlement are aware of it. Finally, the parties are not asking for it to be permanently sealed; only temporarily so. The public right of access will thus not be impaired by permanently sealing the settlement agreements and related documents. Therefore, the motion to seal is **GRANTED**.

### III. Conclusion

The undersigned finds the claims represents a bona fide dispute over FLSA provisions, and the parties' settlement is a fair and reasonable resolution of this bona fide dispute. Additionally, the undersigned finds the attorney's fees portion of the settlement to be reasonable. Finally, the undersigned finds the parties have shown good cause to temporarily seal the settlement agreements. Therefore, the joint motions to seal (doc. 123) and for approval of the settlement (doc. 127) are **GRANTED**, and the settlement is **APPROVED** with the modifications set out in Section II.C above. Each agreement is separately **APPROVED** on those terms. A separate order will be entered.

DONE this 6th day of February, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE